Statement of the Case.
M.ONROE, J.
This is an action in damages for personal injuries sustained by plaintiff in falling over a stone block that was lying on the banquette in front of the house owned by the defendant Mrs. Robin, and rented to Mrs. White. Plaintiff sues Mrs. Robin and her husband, also the city of New Orleans; and defendants, in effect, plead the general denial and contributory negligence, the city calling Mrs. Robin in warranty. The facts are as follows: Plaintiff is rather an elderly lady, who occupied a house on the river side of St. Charles street, the front door of which is, say, 125 feet below the corner of St. Joseph street. She had moved in there in October, 1904, and had not had occasion to pay much attention to the banquette between her house arid St. Joseph street up to the time of the accident, which occurred between 7 and 8 o’clock on the evening of December 27, 1904, and she does not appear to have been aware that, immediately in front of the Robin house, which is between the house occupied by her and the corner, there was lying, on the banquette, inside of the curbstone, and in a eatercornered position, a block of stone about 3 feet square and, probably, 8 or 10 inches thick. It had formerly occupied a position extending from the curbstone across the gutter and served as a stepping stone. A year, or perhaps two years, before the accident, however, St. Charles street had been paved by the city, or under its direction, with asphaltum, and the stone had been moved, no doubt by the paving contractor, to the position in which the plaintiff unfortunately found, and fell over, it. On the evening mentioned, she, Mr. Laine (who died before the trial in the district court), Mr. Marigny and his sister, Mrs. Coleman, left plaintiff’s house with the intention of going to the theater. Mr. Laine went somewhat in advance in order to stop the street car., which was just turning into St. Charles street, at Lee Circle, a block above, the two ladies followed, plaintiff being on the right, nearer the curb, and being engaged in putting on. her gloves, and Mr. Marigny being in the rear. Plaintiff testifies that the light *597 was bad; in fact, that it was rather dark. 'On the other hand, defendants’ witnesses say that, diagonally across the street, at a distance of, perhaps, 100 feet or more, there were two electric lights in front of a saloon, •and that there was a city light over the intersection of the streets; also, that the hall light in the Robin house threw some rays on the banquette. Upon the whole, however, though very likely plaintiff could have seen the stone if she had been looking closely, we find no reason to doubt her statement that the light was bad. She says that she was not hurrying, but Mrs. White testifies that .plaintiff told her, the nest day, that she was hurrying. Whether she was or not, she fail•ed to see the stone, and, stumbling over it, fell, and was knocked senseless, sustaining Injuries which laid her up for several weeks, ■and incapacitated her for some time longer. Mr. Kraeke, an active man of 40, testifies that, though he sees fairly well, with his glasses on, he stumbled over the same stone. Mrs. White had been occupying the Robin house as a tenant for about 10 years, and she testifies that Dr. Robin, who represents his wife, rarely visited the place, and that, some ■time after the accident, she asked him to give her the stone over which plaintiff had fallen, for her church, which he readily consented to •do, saying that he was not aware that there was such a stone. It is fairly evident that he did not know that, as the result of the paving which the city had done, the stone had been misplaced and had become a dangerous obstruction to the banquette, the fact being, as we take it, that, after the street was paved with asphalt, there was no place and no use for such a stone. Mrs. White concluded not to take the stone, after it had been given to her, and, some time'later, it disappeared, and the record does not inform us what became of it. The trial in the district court resulted in a verdict and judgment in favor of plaintiff and against the city of New Orleans for $500, the demand against Mrs. Robin being rejected. The city and the plaintiff have appealed.
Opinion.
The charter of the city of New Orleans requires it to “keep open and free from obstruction all streets.” Act 45 of 1S96, § 14. The right of the citizen to recover damages for injuries sustained by reason of the failure of a municipal corporation to discharge the mandatory duty thus imposed on it is beyond question. Dillon’s Mun. Corp. (4th Ed.) p. 887 (§ 731), p. 1203 (§ 980), p. 1284 (§ 1020); Buswell’s Law of Personal Injuries, §§ 53, 167; Lorenz v. City of New Orleans, 114 La. 802, 38 South. 566; Weinhardt v. City of New Orleans, 125 La. 351, 51 South. 286; Guéble v. Town of Lafayette, 121 La. 909, 46 South. 917; Thompson on Negligence, vol. 5, p. 497, § 6022. No doubt, the person injured may, by his own negligence, so contribute to the injury as to preclude the recovery of damages, but streets and sidewalks are intended for free and constant use and those who use them have the right to assume that they are safe, and they are not expected to exercise the care which would be required in traversing a jungle. *rs has been held by this court:
“All that is required of a pedestrian upon the street is ordinary care, and this does not necessitate his looking constantly where he is going. « * * I-Ie has the right to assume that the roadway is safe for travel.” Weber v. Union, etc., Co., 118 La. 77, 42 South. 652 (syllabus).
In another case, in which a man, with poor eyes and a basket on his head, fell into an excavation which was left in the sidewalk, it said:
“With his poor eyes and his basket on his head, he was not particularly well situated to discover the hole into which he had walked, but the sidewalk is intended for such as he, as well as for those with good eyes and who carry no baskets, and he had the right to assume, within reasonable limits, that if it had been made unsafe, those who made it so would I warn him of the fact or protect him from dan *599 ger.” Rock v. American Const. Co., 120 La. 831, 45 South. 741, 14 L. R. A. (N. S.) 653.
The plaintiff in the present case had lost one of her eyes, many years before the accident, hut she testified that she had experienced no difficulty in going about, on that account; and we are not prepared to hold that the feminine habit of putting on gloves between the front door and the street car, whilst en route to the theater in the city of New Orleans, exhibits- such reckless disregard of danger to life and limb as to preclude the recovery of damages resulting from the failure of those whose duty it is to keep the route free from obstruction.
The learned counsel for the city of New Orleans says, in his able brief;
‘‘A carriage block, or stepping stone, upon a sidewalk, in front of a house, at or beside the curb, which does not interfere with the use of the roadway, nor,. to any reasonable extent, with the use of the sidewalk, does not constitute a public nuisance, and is a reasonable and proper use of the sidewalk, and the municipality is not liable in damages for injuries sustained by a person who stumbles over the stone.”
And he cites a number of authorities, iu support of the proposition, in -which it is held that -water hydrants, trees, hitching posts, telegraph poles, awning posts and stepping ' stones have been held to be permissible, from custom, based on necessity. Thus, in Dubois v. City of Kingston, 102 N. Y. 219, 6 N. E. 273, 55 Am. Rep. 804 (one of the eases cited) it was said:
“The courts have gone quite far in holding such corporations” (municipal corporations) “to a very strict responsibility in reference to accidents caused by a failure to keep the streets and sidewalks in proper and safe condition, but it would be adding to the corporate liability beyond reasonable limits to hold that stepping stones, which are almost a necessity in providing for the interest, comfort, and convenience of the public, in the maintenance of the walks, avenues, and streets, constitute a nuisance and obstruction, and that corporations are liable for damages by reason of accidents caused thereby.”
We concur, iu the main, in the doctrine enunciated in. the cases thus referred to, 'and, if the plaintiff in this case had been injured by coming in contact with a hydrant, hitching post, telegraph pole, awning post, or stepping stone which was shown to be a reasonable necessity or convenience, and the maintenance of which was shown to be sanctioned by time and usage, we should find for the defendant. But, though stepping stones, extending from the curbs across the gutters, have been, and, on some streets, are, still, reasonably necessary in New Orleans the evidence shows that the street, upon the sidewalk of which the stepping stone here in - question was lying, was paved, a year or two before the date of the accident, with asphalt-urn, and, as an incident to the paving, that the stone was moved from the position which it then occupied and placed inside of the curb, catercornered, on the sidewalk, where, so far as we 'are informed, it was not only useless, but an unmitigated nuisance. Mrs. White (defendant’s witness) says:
“It had spanned the gutter until the city removed it and placed it inside the curb, three or four inches, just enough to keep it from being on the curb, but flat on the banquette”—
a statement which she afterwards corrected by saying that the moving of the stone was done by the paving -contractor (who did the work under the direction of the city). An obstruction, like dirt on a boy’s face, is merely matter out of place, and that which may be a stepping stone, when in a position where it is needed and can be used as such, becomes an obstruction when occupying a place intended for other use, and where it is not needed and cannot be so used. If, as we assume is the case, there is, now, no gutter on St. Charles street, and, the asphaltum, extending smoothly down, a vehicle may be driven up to the curb, and the curb rises to the height of an ordinary carriage step, the stone, 3 feet square and 8 or 10 inches high, lying catercornered on the banquette, inside the curb, cannot be called a stepping stone, since it is not needed, and cannot be used for the purpose indicated by the name. It is *601 merely an obstruction, on tlie banquette, and a nuisance; and, as it became so by reason of the act of the paving contractor, employed by the city, the city, and, perhaps, the contractor, and not the owner of the property in front of which the paving was done, are the' parties who should be held liable for the resulting damage.
The judgment is accordingly affirmed.
PROVO STY, J., takes no part, not having heard the argument.