LAND, J.
Plaintiff, a widow 69 years of age, has instituted this suit to recover the sum of $5,525 as damages for personal injuries sustained by her, and occasioned by a fall over ..some cross-ties placed by the employees of defendant municipality on one of its public sidewalks.
Plaintiff alleges that these cross-ties were located about the center of this sidewalk, and laid out at irregular intervals, and that she was not aware of their presence until she had tripped up and fallen over them; that the lighting of the street at the point of the accident was very poor, consisting of only one small electric light at the corner; and that there was no red light or other sign displayed to warn pedestrians of the obstructions which had been placed on the sidewalk.
Plaintiff avers that it is the duty of defendant municipality to keep its sidewalks free from obstructions and safe for the use *565 of the general public; that it was a wrongful act to place such obstructions upon its sidewalks; and that its failure to place some sign or warning of such obstructions and to remove such obstructions constituted gross negligence and carelessness, and was the proximate cause of petitioner’s injury.
Defendant admits that said cross-ties were placed upon this sidewalk by its employees at the request of citizens living on Casson street, on which plaintiff resided, to enable pedestrians to cross a muddy place on said sidewalk, and alleges that these cross-ties were laid along said sidewalk, two together, and in such a manner as to afford a safe way to get over the bad place in said sidewalk, if any one used ordinary care and precaution. Defendant also admits that there was no red light or warning sign placed upon these cross-ties, but avers that said sidewalk was fully lighted at the time of the accident.
Defendant avers that the sidewalk at the point where plaintiff claims to have fallen and injured herself was in the same condition at the time she fell that it had been in for some time prior thereto; that she had full knowledge of such condition; and that, if she was injured, it was because of her own gross negligence and carelessness, and not due to any negligence on the part of the defendant municipality, its officers, agents, or employees.
Defendant avers, in the alternative, that, if the court should hold that it was guilty of negligence, then that plaintiff was guilty of contributory negligence, which was the proximate cause of any injury suffered by her, and bars her recovery in this case.
Plaintiff prosecutes this appeal from a judgment rejecting her demands.
[1] Municipal corporations owe it to the public to keep the sidewalks in such a condition that pedestrians who are ordinarily careful will not be exposed to injury. The right of the citizen to recover damages for injuries sustained by reason of the failure of the municipal corporation to discharge the mandatory duty thus imposed on it is beyond question. Dillon, Munic. Corp. (4th Ed.) p. 887, § 735,'page 1203, § 980, and page 1284, § 1020; Buswell’s Daw of Personal Injuries, §§ 53, 167; Lorenz v. City of New Orleans, 114 La. 802, 38 South. 566 ; Weinhardt v. City of New Orleans, 125 La. 351, 51 South. 286 ; Gueble v. Town of Lafayette, 121 La. 909, 46 South. 917 ; McCormack v. Robin, 126 La. 598, 52 South. 779, 139 Am. St. Rep. 549.
[2-4] All that is required of a pedestrian, upon a street or sidewalk is ordinary care, and this does not necessitate his looking constantly where he is going. He has the right to assume that the roadway is safe for travel. Weber v. Union, etc., Co., 118 La. 77, 42 South. 652, 12 Ann. Cas. 1012 ; McCormack v. Robin, 126 La. 598, 52 South. 779, 139 Am. St. Rep. 549.
The general rule applicable to cases of this character is that persons lawfully making use of the streets and sidewalks within the limits of municipal corporations have the right to assume that they are safe, and that, where one sustains injury by reason of the unsafe condition of such thoroughfares, the burden to show that he contributed to such injury by his own negligence rests upon the corporation. Robertson v. Town of Jennings, 128 La. 806, 55 South. 375 ; Buechner v. City of New Orleans, 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455 ; McCormack v. Robin, 126 La. 594, 52 South. 779, 139 Am. St. Rep. 549.
[5] At the time of the injury the plaintiff resided with her grandson, L. Nick, on Casson street, between Fifth and Sixth streets, in a residential portion of the city of Alexandria. The accident occurred at about 8 o’clock on the night of February 12, 1921, in the block between Sixth and Seventh streets, and at á. distance of about 75 feet from the house of plaintiff’s grandson. At *567 the time plaintiff was, on her way to the house of her daughter. Although able counsel for defendant contends in his argument that this accident happened in the daytime, the fact that it took place at night is established not only by the testimony of the 'plaintiff, but also’ by that of her grandson and his wife, who heard plaintiff scream and ran immediately to her assistance, and by that of Dr. Gremillion, who was called to attend her the same night.
The testimony of plaintiff and her witnesses shows also that the sidewalk at the point of the accident was not properly lighted.
Plaintiff testified:
“I was going to. my daughter’s house, and you know it was dark, and I didn’t know what was in front of me; I didn’t know if it was mud, cross-ties, or what, and I struck a cross-tie and fell down.”
Mrs.. Helen Ditraar, a daughter of plaintiff, also testified that the light on Casson street between Sixth and Seventh streets was very poor; that it was right on the corner of Sixth and Casson streets and very dim at night; and that it was obstructed by the shade of a chinaberry tree at that corner.
’In addition to this, as shown by the photographs taken in this ’.case, the sidewalk in question was along a high board fence, and three of these cross-ties were very close to this inclosure, while others, placed at irregular intervals, are nearer the center of the walk. Plaintiff was picked up at the end of these three cross-ties nearest her daughter’s, house.
- Mrs., B. L. Nick, the wife of - plaintiff’s grandson, testified that there was a light-near her house, ’but that there was no light between her home' and the place where the accident happened. When asked, if she had been standing in her door, could she have seen plaintiff on the sidewalk at the place of the accident, she stated' that you could have seen her like a shadow. When it is remembered that plaintiff is a woman 69 years of age, it is not at all unnatural or unreasonable for her to have failed to have seen and to have stumbled over cross-ties laid irregularly upon the surface of a dimly lighted dirt sidewalk.
[6] These cross-ties were nothing more or less than obstructions on the sidewalk and stumbling blocks to pedestrians, and especially dangerous to life and limb’ at night. As they were hewn, and not sawed, they presented unsafe surfaces to the pedestrian to walk upon even in daylight, when the sidewalk was muddy.
A civic improvement of this menacing character cannot be condoned by the mere request of the citizens in the immediate neighborhood for relief in passing over a mudhole in the sidewalk.
[7] Under the circumstances, the defendant municipality, in the interest of public safety, should have either refused the request, or should have properly filled the mudhole with gravel or cinders, so as to present a level and safe surface for passage. Nor is the negligence of the defendant municipality lessened by the fact that plaintiff resided in a sparsely settled portion of the city. The sidewalk in question was used by the public, whether residing in that immediate vicinity or not, and citizens living in less populous portions of a city are entitled to the use of free and unobstructed sidewalks, equally with the other inhabitants.
Moreover, the testimony shows that this dirt walk was level and in good condition, before the defendant municipality dug a sewer ditch near it, and cut off the drainage, by throwing up the dirt and forming an embankment that held the water on this sidewalk. This walk was dry at the time of the accident. Half of these cross-ties had .been removed, but the other half was left by the city on the walk as obstructions, although not needed, as there was no mud, and they *569 were not removed by' defendant until 8 or 10 days after tbe accident.
The testimony in this case is conflicting as to whether plaintiff knew of the presence of these cross-ties on the sidewalk at the time of the accident. Even had she known that they were there, the city light was so dim that she conld not discern them with any distinctness or certainty, so as to avoid contact with them. Under these circumstances, how cou.ld plaintiff keep a proper lookout to avoid injury, or be guilty of contributory negligence for failure to see these objects in the dark?
[8, 9] Defendant municipality avers in its answer:
“That said cross-ties were placed across a bad place in said passageway at the request of citizens living along same, and that they were placed there simply as stepping stones; that they were not a dangerous obstruction or obstacle, but afforded a safe and easy means of crossing said bad place during wet spells.”
This being true, it was not negligence In itself for plaintiff to know that these cross-ties were on the sidewalk, nor was it negligence in itself for her to use this sidewalk either in the day or in the nighttime, as said cross-ties were placed on same to be used by the citizens of Alexandria at any time. Nor is it any defense on the part of defendant municipality because “there was a plain, safe, convenient, visible, and accessible beaten path by the side of the cross-ties which had been laid across said muddy place.” Admitting this to be true, yet, in the dark, how was it possible for plaintiff to distinguish between this “beaten path by the side of the cross-ties” and the cross-ties themselves?
Plaintiff testified:
“No, sir; I didn’t know anything about any cross-ties being there. I knew a few were there, but I never got out hardly ever. I was going to my daughter’s house, and you know it was dark, and I did not know what was in front of me; I didn’t know if it was mud, or cross-ties, or what, and I struck a cross-tie and fell down.”
The facts of this case present a very different situation from a case where there is a dangerous hole in the sidewalk, condemning its use by the public, or where the obstructions on the sidewalk are purely accidental and temporary, and the injured person is aware of these conditions at the time of the accident, yet heedlessly attempts a passage.
[10] These cross-ties were placed by defendant municipality as a civic improvement on this dirt sidewalk, and the citizens of Alexandria were invited by the municipality to use the same as a public passageway. It was therefore the clear duty of defendant municipality to have maintained sufficient light along this sidewalk to protect the safety of those using it, and its failure to do so was the proximate'cause of the injury to plaintiff.
[11] We therefore conclude that plaintiff is entitled to recover. However, we are of the opinion that the amount of damages claimed by her is largely excessive. Plaintiff sustained a fracture of the right limb near the ankle when she stumbled and fell.
The accident was necesssarily accompanied with severe pain; but we find from the testimony of Dr. Gremillion, a kinsman of plaintiff, taken on May 2, 1921, that there was a good union of the fracture, and that plaintiff would be able to use her right limb practically as well as before the accident in from three to four months.
The testimony of Dr. Gremillion also shows that plaintiff’s other limb has developed into what is called a “milk leg,” caused presumably by a certain amount of infection getting in and being carried into the vein of the left limb, as the result of the fracture and laceration of the right limb from the accident.
It seems from the statements made by Dr. Gremillion that plaintiff may have some trou *571 ble from the “milk leg,” as it has a tendency to swell, but the extent and duration of this trouble is rather problematical, as disclosed by his testimony.
The doctor’s bill amounted to at least $250, the nurse’s hire to $200, and the medical supplies to $75, making a total of $525. For pain and suffering and the condition of the left limb, we feel that the additional sum of $1,000 is a reasonable and just award.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff and against the city of Alexandria in the sum of $1,525, with legal interest from judicial demand, and that defendant pay all costs of this suit.