No. 703

First Circuit

———

ROGGE v. CAFIERO

———

(December 1, 1930. Opinion and Decree.)
(March 3, 1931. Application for Rehearing Dismissed on Motion of Appellant.)
(January 26, 1931. Case Remanded for Evidence of Acquiescence.)

———

566

Charles T. Wortham and Walter Lemann, of Donaldsonville, attorneys for plaintiff, appellee.

Milner & Porteous, of New Orleans, attorneys for defendant, appellant.

ELLIOTT, J. Thelma Rogge claims damages of Leo Cafiero in amount of $4,224.25. Her ground of action that said Cafiero had stretched a steel cable in about the center of Lessard street, running lengthwise the street and crossing the place where Lessard street was intersected by Mississippi street in the city of Donaldsonville, and was engaged by means of a capstan and said cable in pulling an engine, weighing 28 tons, along Lessard street to the place where it was to be installed. That the cable was not moving and was lying at the time flat on the ground. That to all appearances it was perfectly harmless, and it was perfectly safe for her to cross the street. That nobody was stationed there by defendant to warn against the danger. That the capstan was operated by a

mule; that there was a distance of about 400 feet in between the capstan and the engine which was being moved. That crossing the street on foot, just as she stepped over the cable defendant and his agents and employees caused the mule to start, thereby causing the cable to suddenly leave the ground, and as it rose in the air it struck her on her left foot, throwing her forcibly and violently to the pavement, with the result that her elbow was badly broken and contusions received on her knee, with other minor injuries. That she suffered great pain; that her arm remains permanently stiff, as well as a disfiguring scar. That she was forced to undergo an expense of $724.25 on account of her injuries. That she lost three months' salary at $50 per month, all of which she claims, together with $3,500 on account of her suffering, permanent injury, and disfigurement, a total of $4,224.25.

Defendants filed an exception of no right or cause of action, which was overruled. Defendant urges that this ruling was erroneous. He urges that the line was not dangerous; but if so, that it appears as a proper inference from the petition that it was an obvious danger, and that plaintiff's injury in stepping over it resulted from her own negligence and want of care.

Taking all of plaintiff's averments on the subject as true, for the purpose of reviewing the ruling of the lower court, it appears, as a proper conclusion and inference from the petition, that defendant had created a danger in a frequently used street of the city of Donaldsonville, but which according to appearances was harmless, and had placed no watchman there to guard against it those who were walking and using the street on foot. That although it

appeared to be safe to cross the street, yet it was not safe. That plaintiff saw the capstan and line placed in the street for the purpose of pulling the engine, as she came to step over it, but the line at the time was not moving and was lying flat on the ground. That defendant, just as she was stepping over it, caused it to suddenly leave the ground and rise in the air, striking her on the left foot and throwing her to the pavement, injuring her.

The exception was properly overruled.

The defendant answered, denying liability. He alleges that the line was some 200 or 300 feet long, and denies that it was lying flat on the ground; and alleges that it was between 6 and 9 inches above the ground and obvious to plaintiff's view and not dangerous to step over. That at the time the plaintiff started to step over it, the chief of police of Donaldsonville had his foot on it pressing it to the ground so that automobiles could pass over it; all in full view of the plaintiff. That just as the last of five cars had passed over it and just as the chief of police removed his foot, the plaintiff attempted to step over it, without taking care to step far enough to keep from touching it, and was tripped and fell as a result of her own negligence and want of care. That plaintiff saw the line and could have stepped over it safely if she had used proper care. That her own negligence in stepping over it is what caused her to fall, etc.

The case was tried before a jury, and they rendered a verdict in favor of the plaintiff for the full amount of her demand. The defendant moved for a new trial.

One of the grounds of his motion is that the jury was so lacking in intelligence that they were unable to apply the law given them by the court to the established and uncontradicted facts of the case. As for this ground, the defendant does not allege nor show that he had challenged any of the panel on that account; consequently there is nothing in the record which supports his motion, and as the lower court overruled his motion and approved the verdict, we are unable to say that the court erred.

Another ground is that the form of the verdict was unknown to the law, and amounts to no verdict at all. The verdict was written on the back of the petition in words as follows, to-wit:

"To the Honorable Judge of this Court: We submit this our decision for the full amount, as petitioner prays for.
"[Signed] F. M. Crawford, Foreman."

The minutes show that the court, upon receiving the verdict, stated to the jury that the word "petitioner" meant plaintiff, and asked the jury if that was their intention and verdict; and the jury stated that it was. Counsel for the defendant then requested that the jury be polled. The jury was polled, and each of them asked the question, "Is this your verdict?" and each of them answered in the affirmative.

The provision in the Code of Practice, art. 522, that the verdict shall be in the words, "Verdict for the plaintiff," or "Verdict for the defendant," is directory. A substantial compliance is sufficient. City Bank of New Orleans v. Foucher, 9 La. 405; Wichtrecht v. Fasnacht, 17 La. Ann. 166; Cooper v. Cappel, 29 La. Ann. 214.

The verdict showed the intention and finding of the jury and was sufficient. It has been held that a finding for the full

amount of a claim is sufficient. Dry-Dock Co. v. Steam-Boat Line, 43 La. Ann. 258, 9 So. 630. This attack was therefore properly overruled.

Another ground is that the jury was allowed to separate during the lunch time. There is no law against this in civil cases if the jury are properly instructed by the judge; and there is no showing that they were not, nor that any of them did anything wrong; no proof that they separated. Therefore this ground can not be sustained.

It is charged as a further ground that the stenographer was incompetent and did not take down all the testimony. The record contains a motion to correct the testimony, setting out that certain alleged matters were omitted, etc. The plaintiff in the case admitted that such was done and agreed to the correction. As we understand it, the testimony stands corrected accordingly, and which correction we have taken into account in our consideration of the case.

The ground that the verdict was contradictory to the law and the evidence, and the further grounds set out in paragraphs (A) to (H), both inclusive, and the Nos. 7, 8, 9, section 5 of the motion, are involved in the appeal on the merits of the case, and our action on the merits will be our ruling on these grounds.

On the merits the plaintiff testifies that when she started across the street she noticed the machinery, and engine weighing 28 tons, being pulled along the street by the capstan and cable. That the cable was lying flat on the ground and not moving, when she came up to cross over it. That others just ahead of her had stepped over it and she felt that she could do like-wise. She made a step with her right foot, long enough not to touch the cable, at which time it was lying flat on the ground, but the cable raised and tripped her left foot and she fell to the ground and was injured. That after she fell, she saw that the cable had raised 6 or 7 inches; that she thought she had raised her left foot sufficiently to miss the cable; that she didn't expect it to rise, etc. That the cable left a scratch on her left shoe; that she could see the grease of the rope marked all along the front of her shoe. She says that at the time she came up to where the line was she saw Mr. Dill, chief of police, across the street talking to Mears Folse. The testimony of Miss Rogge is supported by Mears Folse, he, with others, assisted her to get up. And he testifies that the wire cable left a mark running across the top of her shoe, and that Mr. Dill did not have his foot on the cable at the time she tripped and fell.

Mr. Folse says:

"I was still speaking to Mr. Dill when I saw Miss Rogge fall to the pavement. When she got to the cable and was stepping over it, she tripped and fell."

In another place speaking of the time she fell, he says:

"Q. Tell the jury whether the cable was on the ground or not?
"A. It was lying practically on the ground and started to rise.
"Q. You saw that?
"A. Yes, sir."

Defendant urges that Mr. Dill contradicts the claim of Miss Rogge, as to the rising of the line from the ground; but we do not find that his testimony goes as far as is claimed for it; but it is not in harmony with her statement and that of Mr. Folse

as to what he was doing at the time she fell. He says that five automobiles had come across the ferry, and it was necessary for them to cross this line:

"I kept my foot on the cable until every car passed, and just as the 5th one passed, I still had my foot on the line, and just as I turned my head I saw Miss Rogge fall.

"Q. Did Miss Rogge make any statement as to how the accident happened?

"A. She said the cable didn't look to be so high."

He further stated that he had been talking to Mr. Folse, but it was before the accident; that he had sent for a plank, and that after the accident to Miss Rogge he had the plank placed across the line to make it safe for people to cross. That the cable would some times rise up 7, 8, 9 inches, maybe 10 inches, and then go down. We are satisfied that it raised up when it was taut and when it was pulling the 28-ton weight it raised up and was taut; but the people were not warned when it was about to raise up. Consequently when it was lying on the ground still, as it was doing when Miss Rogge came to step over it, it was not an obvious danger. She had no reason to expect that it would rise up so quick and so high after she had stepped over it with one foot, that her other foot would catch under it. It was an unknown and non-apparent danger. No authority to subject the street to such a danger existed in defendant. The fact that the chief of police was present, saw what was going on, and had put his foot on the line and held it down so that automobiles could cross over it, did not placate the situation. Plaintiff had the right to cross the street at the usual place, and to expect that it was safe to do so, and not rendered dangerous by the sudden movement of this line. The defendant should have covered it up so as to make it safe to step over before the accident, because he knew that the line would rise taut above the ground quickly when its power was applied to the 28-ton weight it was moving along the street. The testimony of Mr. Dill that, just as he lifted his foot off the line, Miss Rogge fell, contradicts her and Mr. Folse only as to what he was doing at the time. His statement in that respect could be true, and her statement that the line was lying still on the ground at the time and place where she attempted to step over it, and that after she had stepped over it with her right foot it raised up, caught her left foot, and tripped her before she could finish getting over it, can also be true, because the evidence tends to show that the place where she tripped and fell and the place where he was standing at the time was 25 or 30 feet apart.

In the case Smith v. City of Baton Rouge et al., 166 La. 472, 117 So. 559, the defendant waterworks company had dug a hole in the street for the purpose of repairing a water main and had left it uncovered. The hole was several feet deep and full of water. In that case a young child, too young to have discretion and judgment, fell into it and was drowned. The case so far as it concerned a child is not comparable to nor an authority in the present case; but in the course of the decision the court made it plain that the defendant had no right to render a street dangerous, that the consent of the municipal authorities could not justify doing so, and that, the waterworks company having created the danger, they should, while it lasted, have properly guarded it, and that, having failed to do so, it was liable in damages.

In Palermo v. Orleans Ice Mfg. Co., 130 La. 833, 58 So. 589, 40 L. R. A. (N. S.) 671, the defendant knew the danger it had cre-

ated in a street and had placed a watchman there to guard the people against it, but the watchman neglected his duty and injury resulted. The court held defendant responsible in damages.

In the Palermo case the party injured was an irresponsible child, but that does not alter the principle which the case stands for in the matter of creating an unknown and non-apparent danger in streets.

In Cline v. R. R. Co. et al., 43 La. Ann. 327, page 334, 9 So. 122, 125, 26 Am. St. Rep. 187, the court in discussing a similar principle, says:

"But, even if the driver had seen the hole, and had not avoided it, nothing shows that he knew of its dangerous character."

And a defense of contributory negligence urged in that case was overruled. See also McCormack v. Robin, 126 La. 594, 52 So. 779, 139 Am. St. Rep. 549; Thompson on Negligence (2d Ed.) vol. 1, Subject, Obstructions Endangering Drivers on Roads and Streets, secs. 1214 to 1281.

The provisions, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused * * * the things which we have in our custody * * * with the following modifications," Civ. Code, art. 2317, and, "When the masters or employers * * * might have prevented the act which caused the damage, and have not done it," Civ. Code, art. 2320, are applicable without the modification, because the defendant was himself in charge of the work. But the modification also applies because this line could have been covered over and made harmless for people stepping over it, but defendant did not do it.

The testimony of Miss Rogge is supported by that of Mr. Folse; so, even to the extent that her testimony may be regarded as contradicted by Mr. Dill, it remains that the preponderance of the evidence is that she was tripped and fell and was injured as stated in her testimony. The jury and the district judge came to the same conclusion that we have, that plaintiff's injury and suffering was due to the fault and neglect of the defendant, and he is therefore obliged to repair it. The merits being with the plaintiff, it follows that defendant's alleged grounds for new trial, not heretofore acted on, were properly overruled.

We find that defendant is responsible to the plaintiff on account of the injuries and damages sustained as a result of her fall.

Defendants contend that the judgment for $4,224.25 is excessive under the evidence and should be reduced. She claims on account of doctor's bills, expenses at Touro Infirmary, and after leaving the hospital, necessary traveling expenses back and forth from Donaldsonville to New Orleans for the purpose of her treatment, which had to be continued, and for board and lodging in New Orleans, etc., a total of $725.25. The amount of this claim and her further claim for $150 on account of loss of salary as stenographer is not seriously contested, and will be allowed as claimed.

She claims $2,000 on account of suffering, $1,000 on account of permanent disability in her arm, and $500 on account of a permanent scar on her arm.

The elbow joint in plaintiff's arm was fractured in such a way that an operation was necessary, and for that purpose she underwent an anæsthetic and suffered

excruciating pain for about two weeks, and continued to endure severe pain and suffering for about a month longer, and endured some pain about another month. We have concluded that $1,500 is sufficient compensation on that account.

The injury to her elbow is permanent; she cannot flex or bend her arm upward as she could normally do. In other respects, however, she can make about as good use of her arm as she ever could. We have concluded that $500 is sufficient compensation on that account.

Her injury resulted in a large, permanent scar on her arm at and near the elbow; the scar may be seen, but it is not very conspicuous. We have concluded that $125.75 is sufficient compensation on that account, making a total of $3,000.

For these reasons the judgment appealed from is reduced from $4,224.25 to $3,000, and as thus amended, affirmed. The judgment to draw interest at 5 per cent per annum from February 9, 1930, until paid.

Defendant and appellant to pay the cost in the lower court. Plaintiff and appellee the cost of appeal.

ON APPLICATION FOR REHEARING

PER CURIAM. In this case, Thelma Rogge, the plaintiff, applied for a rehearing, and on January 5, 1931, while her application for rehearing was pending, filed a petition to withdraw said application for rehearing alleging in said petition that she had received full payment and satisfaction of the judgment therein rendered, which petition for rehearing and petition to withdraw are both pending in this court.

The defendant, Leo Cafiero, on December 13, 1930, also petitioned for a rehearing on the ground, amongst other matters, that an error made in calculation to his prejudice should be corrected, and said application is also pending in this court.

The court not being able to act satisfactorily on the petition of either party, due to the averment of the plaintiff, appellee, that the judgment had been settled, it is ordered that this case be referred back to the district court in and for the parish of Ascension, and that testimony be taken in said district court at a time to be fixed by the district judge after notice to the plaintiff and defendant as to whether the judgment herein, has been paid and satisfied; that said testimony be taken in writing, and when taken, that said testimony be placed in the record, and the record returned to this court at Baton Rouge, all to the end that the applications of the plaintiff, appellee, and the said application of the defendant, appellant, for a rehearing may be acted on properly.

———

In this case, on January 26, 1931, this court entered an order herein referring this case back to the district court in order that testimony might be taken as to whether or not the judgment herein rendered had been satisfied, as will appear by reference to the said order.

On January 28, 1931, after said order had been entered, the defendant, Cafiero, filed a motion in this court to withdraw his application for a rehearing on the ground that the case had been compromised and settled.

And it appearing now that both parties are agreed on that subject, our said order of January 26, 1931, is recalled and set aside and it is now ordered that the rehearing prayed for by said Leo Cafiero be withdrawn and the appeal dismissed.