## ROBINSON v. CITY OF ALEXANDRIA.
### No. 5496.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1937.

Leo Gold, of Alexandria, for appellant.

H. B. Gist and S. G. Thornton, both of Alexandria, for appellee.

DREW, Judge.

Plaintiff instituted this suit against the city of Alexandria for the sum of $2,525, with legal interest thereon from judicial demand. For a cause of action she alleged as follows:

"4. That on or about the night of September 7, 1935, at about the hour of eight P. M., petitioner was walking along the sidewalk on the east side of Vance Avenue in the City of Alexandria, traveling in a northwesterly direction toward Lee Street; and in walking along said sidewalk she stepped into a great depression in the sidewalk, tripped when her foot caught in said depression, and stumbled against the higher level of the sidewalk where the concrete abruptly ended and fell forward on said concrete sidewalk in a violent manner causing injuries as will hereinafter be more particularly detailed.

"5. That the said sidewalk as well as the entire block, was poorly illuminated; that said depression or hole in the sidewalk into which petitioner stepped, and which caused her to fall, was about in the center of the said block, and approximately one hundred twenty-five feet from the corner; and that the only means of illumination was a small electric globe suspended from a telephone post at the corner south of the place of said accident; that said globe was very small, and that there was no reflector above it to throw its light down and around; that said light furnished very little illumination for the block, and practically none at all in the center of the block where petitioner fell and injured herself; that there was no other light or warning of any kind to indicate to pedestrians the existence of such dangerous depression in the sidewalk."

She further alleged the depression in said walk had existed for many months and that the city either knew of it or should have known of it, and for its negligence in allowing the walk to remain in that condition in a thickly populated section of town was gross negligence; that she had never before made use of this walk and did not know of its dangerous condition.

Defendant denied the principal allegations of plaintiff's petition and answered further as follows:

"5. Further answering said Paragraph five, defendant avers that the usual and customary street light was located and burning on the corner of the block where plaintiff claims to have been injured; that said light was ample to permit any person who was walking along said sidewalk near the center of said block to see any unusual depression or abnormality in said walk or

street, if they had been keeping a proper lookout and observing the sidewalk and street in front of them. * * *

"13. Further answering said suit, defendant avers that the sidewalk in question was about one block and a half from the right of way of the Texas & Pacific and Missouri Pacific railroads upon the opposite side of which, in the neighborhood of Vance Avenue is set apart exclusively for industrial plants such as sawmills and lumber yards connected therewith, and only about one and a half blocks from the end of Vance Avenue; that said location is a point where little or no traffic passes either day or night, other than logs and lumber going to and from the sawmill section, and where few pedestrians are ever found traveling either in the daytime or nighttime, and is further near the extreme outer edge of the neighborhood which is set aside for homes of colored people.

"14. Further answering said suit, defendant avers that if there is any depression in the sidewalk at the point alleged in plaintiff's petition at the time of her claimed injury, that same is such a depression or subsidence in the surface of said sidewalk which is usually and customarily found in all concrete sidewalks, and which will be found in hundreds of places in any city the size of Alexandria, Louisiana, and was of such a nature as would leave the said sidewalk in a reasonably safe condition for the use of persons using same in the exercise of ordinary care and prudence.

"15. Further answering said suit defendant avers that any depression or abnormality which may have been in said sidewalk at the point alleged was not known to be there by the defendant company or its responsible officers or representatives, and that the said defendant or responsible officers or representatives had no actual knowledge of any such abnormality in said sidewalk; that same had never been called to their attention, and that in view of the circumstances and location of the said sidewalk it could not be held to have any constructive notice thereof.

"16. Further answering said suit, in the alternative and only in the event this Honorable Court should hold that there is any negligence on the part of the said defendant, defendant avers that the said plaintiff was contributorily negligent in walking along said sidewalk at night without keeping the proper lookout, and in not looking where she was going; defendant further avers that the said plaintiff was negligent in not observing any irregularity which may have been in said sidewalk in view of the circumstances, the location and general surroundings at the location where she is alleged to have been injured, and that her said negligence was at least a contributing cause in bringing about her said alleged accidental injury, and that her said contributory negligence is plead in bar of this suit."

On these issues the case was tried below, resulting in judgment rejecting the demands of plaintiff, and she has perfected this appeal.

Between the hours of 8 and 8:30 on the night of September 7, 1935, the plaintiff, a colored woman 52 years of age, was walking on Vance avenue in the city of Alexandria, returning from a visit to the home of a deceased colored preacher where a wake was in progress. The sidewalk on this avenue was made of concrete. After going a distance of a block or two, she stepped into a break or depression in said sidewalk, causing her to lose her balance or trip, and she fell forward onto said paved walk, breaking her right arm near the wrist.

Vance avenue is in the colored section of the city and is near the outer city limits. The paved sidewalk on this avenue is the only through paved walk in that section of the city and is used by a great number of the colored people living in that section. The avenue is thickly populated and there are two schools on it. Due to the fact that it is the only paved walk in that section, those living on that avenue or on nearby streets make use of it daily, as well as most of the school children. Vance avenue leads to Lee street, which is one of the main arteries of traffic through the city. The place of the accident was about four and one half blocks from Lee street, and plaintiff was walking in that direction. The illumination at the scene of the accident was very poor. At the corner of the block there was a light consisting of an ordinary electric light globe hanging from a pole. The size of the globe is not shown other than by photographs in the record. At the corner of the block behind plaintiff the globe had a reflector on it. The one at the corner in front of her did not have a reflector. We are convinced the scene of the accident was poorly lighted.

The testimony as to the defect in the walk is conflicting, but the photographs in the record, the correctness of which is not disputed, speak louder than the conflicting testimony as to the defect. The sidewalk was put down in 1917, and, so far as the record discloses, it had never been repaired. The break in the walk occurred in 1927 or 1928, and had gradually become wider and deeper. The narrowest place in the break was 14 inches wide and the widest several feet, and it extended the entire width of the walk. It had been there so long that trash and dirt had accumulated in it and in places grass was growing. The bottom of the break, as shown by the photographs, was uneven and covered with sticks and rubbish. The actual depth at the deepest point, as testified to by the city employees, was one and one-half inches, but the photographs show that concrete at the edge of the break lipped, making a perfect setting for one to hang her toe under and cause her to fall. A study of the photographs convinces us that the sidewalk was not safe for a pedestrian to use at night and especially for one who was not familiar with its condition.

After the accident, the city repaired the sidewalk, and to do so it was necessary to remove and replace a new square of concrete five feet by five feet; in fact, one entire section of the walk. There had never been any inspection made of this walk by any of the city officials. In fact, the city has no one whose duty it is to inspect the condition of the streets and walks in the city. It depends upon every employee of the city to report any defect they might occasionally see, and on the public in general to report such defects. We are convinced the city officials did not have actual knowledge of the condition of this walk, due to the negligence in not at least occasionally inspecting a walk which was nearly twenty years old. Actual knowledge, however, is not necessary in a case such as this where the defect had existed for many years. Knowledge is imputed to the city. In McQuillin's "Municipal Corporations" (2d Ed.) vol. 7, p. 240, we find the following which we quoted and adopted in the case of Holbrook v. City of Monroe, 157 So. 566, 568:

"'Constructive Notice Based on Length of Time. Without variableness the late decisions apply the general rule that if the defective condition or danger which caused the injury has existed for such a period of time that the municipal authorities by the exercise of ordinary care and diligence must have known of its existence, and could have guarded the public against it and failed to do so, notice will be imputed to the municipality. If the municipality fails to make inspection with sufficient frequency to discover the condition, the result is the same. "It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see that they are kept in a reasonably safe condition for travel. They cannot fold their arms and shut their eyes and say they have no notice. After a street has been out of repair so that the defect has become known and notorious to those traveling the street and there has been full opportunity for the municipality, through its agents charged with that duty, to learn of its existence and repair it, the law imputes to it notice and charges it with negligence."' Citing cases from Alabama, Connecticut, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, and the case of Smith v. New Orleans, 135 La. 980, 66 So. 319, wherein the above-quoted provision is cited."

Having found the sidewalk to be dangerous for pedestrians to use at night and that the illumination was not sufficient where such a defect existed, and that the city had constructive knowledge of the defect, it is only necessary to apply the law governing in such cases. The leading case in our jurisprudence on the duty the municipality owes to the public to keep the sidewalks in proper repair is Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58, 59, which ruling we adopted in the case of Holbrook v. City of Monroe, cited above. In the Lemoine Case the court said:

"Municipal corporations owe it to the public to keep the sidewalks in such a condition that pedestrians who are ordinarily careful will not be exposed to injury. The right of the citizen to recover damages for injuries sustained by reason of the failure of the municipal corporation to discharge the mandatory duty thus imposed on it is beyond question. Dillon, Munic. Corp. (4th Ed.) p. 887, § 735, page 1203, § 980, and page 1284, § 1020; Buswell's Law of Personal Injuries, §§ 53, 167; Lorenz v. City of New Orleans, 114 La. 802, 38 So. 566; Weinhardt v. City of

New Orleans, 125 La. 351, 51 So. 286; Gueble v. Town of Lafayette, 121 La. 909, 46 So. 917; McCormack v. Robin, 126 La. [594] 598, 52 So. 779, 139 Am.St.Rep. 549.

"All that is required of a pedestrian upon a street or sidewalk is ordinary care, and this does not necessitate his looking constantly where he is going. He has the right to assume that the roadway is safe for travel. Weber v. Union, etc., Co., 118 La. 77, 42 So. 652, 12 Ann.Cas. 1012; McCormack v. Robin, 126 La. [594] 598, 52 So. 779, 139 Am.St.Rep. 549.

"The general rule applicable to cases of this character is that persons lawfully making use of the streets and sidewalks within the limits of municipal corporations have the right to assume that they are safe, and that, where one sustains injury by reason of the unsafe condition of such thoroughfares, the burden to show that he contributed to such injury by his own negligence rests upon the corporation. Robertson v. Town of Jennings, 128 La. [795] 806, 55 So. 375; Buechner v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L.R.A. 334, 104 Am.St.Rep. 455; McCormack v. Robin, 126 La. 594, 52 So. 779, 139 Am. St.Rep. 549."

 Having, under the above authorities, found the city as liable to plaintiff for damages caused by the defective sidewalk, it is encumbent upon the city to show contributory negligence on the part of plaintiff in order to escape liability. The only testimony on that point is that plaintiff passed over this place before dark on the same day she was injured. The evidence is conclusive that plaintiff had never before that day used this walk; that on that afternoon late she passed over this place for the first time. It was daylight and not difficult for her to make her way across it without paying any particular attention to it. She stated that she did not pay any attention to it and did not remember such a place was there. It might make a difference if she had been a frequent user of this sidewalk, but the mere fact that she had passed over this place a few hours before in daytime and paid no particular attention to the place cannot cause her to be contributorily negligent in not seeing it and avoiding it in the dark. Lemoine v. City of Alexandria, supra, also covers this point. We therefore conclude the defendant is liable to plaintiff for the damages she suffered.

Plaintiff is 52 years old and claims to have earned her living by cooking; however, she was not working at the time of the accident. She claims her usual wages are $5 per week. She did not remember who she had worked for last. We are not impressed with her claim for loss of wages

When she fell, she received a multiple fracture of the radius. Her arm was put in a plaster cast and remained in it for eight weeks. Splints were then used for several weeks. She suffered a great deal of pain, and her condition at time of trial is a slight stiffness in the four fingers of the hand which prevents her from entirely closing the fingers against the palm of the hand. She is, however, fully able to perform the duties of a cook, the trade she claims to have followed prior to the accident.

Her doctor's bill was $25. We think for pain and suffering and the slight disability to her hand which is permanent, an award of $750 will fully compensate her. She is also entitled to the doctor's bill of $25.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is reversed, and there is now judgment for plaintiff and against defendant in the sum of $775, with legal interest from judicial demand until paid, and for all costs.