323 So.2d 430 (1975)
Katie Pickens, wife of/and Jesse PICKENS
v.
ST. TAMMANY PARISH POLICE JURY.
No. 56146.
Supreme Court of Louisiana.
December 8, 1975.
*431 J. Michael Cumberland, Badeaux, Discon, Cumberland & Barbier, New Orleans, for plaintiffs-applicants.
Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for defendant-respondent.
SUMMERS, Justice.
Early on the morning of June 29, 1970 Richard B. Ellis was driving his pickup truck on Ben Thomas Road on his way to work at the plant of Delta Roofing Mills in St. Tammany Parish. The road was narrow and blacktopped. He was driving below 30 miles per hour. As he approached the vicinity of the mill, he suddenly saw a ditch or excavation across the road. He slammed on the brakes, but, nevertheless, as he crossed the ditch, due to its depth, the truck bolted and he bounced so that his head hit the roof of the truck. By accelerating the engine he was able to pull out of the hole. There were no barricades or signs to warn motorists of the excavation. Fearful that someone would be hurt, when he arrived at the plant he had the bookkeeper there "call the police juryman about the hole."
Soon thereafter, about 6:45 a.m., Katie Pickens was driving her husband Jesse to work in their 1966 Chevrolet pickup truck. As they proceeded at 25 to 30 miles per hour along Ben Thomas Road near the Delta Roofing Mill, which was near the Slidell Felt Mills where Jesse worked, Katie suddenly observed an open excavation ahead spanning the road from one side to the otherthe identical excavation Ellis had just traversed with difficulty. She applied the brakes in an effort to avoid running into the opening, but it was too late. The front wheels of the truck ran into and remained fast in the excavation bringing the truck to an abrupt and violent stop, precipitating Katie against the steering wheel and Jesse into the windshield.
When they recovered from the impact, it was apparent to the Pickens that the two front wheels were stuck in the hole. So firmly implanted were the wheels that the truck could not be driven forward or in reverse under its own power. Jesse therefore jacked the front wheels up and filled the hole beneath the wheels with debris until the truck was lifted enough to be backed away. The excavation was for installation of an 18-inch drain culvert. In positioning the jack to raise the front wheels, Jesse placed it on the culvert which, at that point, was visible and uncovered. He estimated the top of the culvert to be eighteen inches below the road surface.
After extricating the truck from the hole in the road, the Pickens reported the accident to the sheriff's office in Slidell. The sheriff's staff, in turn, called Trooper Allen of the State Police, who followed the Pickens couple to the site of the accident. When they arrived employees of the police jury were there filling the excavation. Because the filling was practically complete, Allen was unable at that time to estimate the depth of the ditch before the filling began.
As a result of the impact from the sudden stopping of their truck, Jesse and Katie Pickens received injuries requiring hospitalization and treatment by their physician. They instituted suit against the Police Jury of St. Tammany Parish to recover the damages they incurred. The parish answered and denied liability.
The trial judge held that the Pickens had met the burden of proof, finding that a serious depression existed across the road which Katie Pickens approached at a reasonable rate of speed until she observed it but could not stop. Both were held to be free of contributory negligence. Accordingly, the trial judge awarded $750 to Katie for personal injuries and $4,894.47 to Jesse for personal injuries and loss of wages, and for medical expenses and hospital bills for him and for Katie. On appeal to the First Circuit the judgment was reversed. 308 So.2d 361. Certiorari was *432 granted on application of Jesse and Katie Pickens. 311 So.2d 261.
This decision is based upon the premise that the Police Jury of St. Tammany Parish is charged with the function of providing and maintaining highways, streets and roads not provided or maintained by the State Department of Highways, or municipalities within the parish, and that a dereliction in this responsibility should be borne by the parish rather than the individual who suffers injury thereby. The rule derives from the fact that public ways are strictly under the control of public authorities, and the individual has no adequate means of control or maintenance over these streets which are indispensable to the daily conduct of his affairs. It is a result dictated by reason. A parish should not have exclusive authority over its roads without commensurate responsibility when these roads are a matter of such paramount importance to the business and social intercourse of its citizens.
The rule has been well stated in Clinton v. City of West Monroe, 187 So. 561 (La. App.1939), where a municipal corporation was involved:
"A municipality may be held in damages to those injured because of its failure to keep its streets and sidewalks in a reasonably safe condition for travel. If this were not true, persons who desire to use such streets and sidewalks could never safely assume that they are in such condition to warrant travel thereon. If so used, they would have to keep their eyes constantly glued on the surface before them and at night carry a lighted lamp for protection against injury. Holes, pits and excavations in the streets or sidewalks could be left by the agents or servants of the municipality, resulting in death or severe bodily injury to its citizens, with no recourse for damages by anyone, but for the exception to the rule now so well recognized in this state. The jurisprudence of the state is replete with cases enforcing the principle embodied in the exception and condemning municipalities in damages to persons injured because of bad repair of their streets or sidewalks. O'Neill v. City of New Orleans, 30 La.Ann. 220, 31 Am. Rep. 221; Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58, and cases therein cited; Holbrook v. City of Monroe, La.App., 157 So. 566; Robinson v. City of Alexandria, La.App., 174 So. 681; McQuillin on Municipal Corporation, Volume 7, 3013, pp. 268, 269." See also Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58 (1922).
The same rules apply to parishes. A parish police jury, however, is not an insurer of travelers upon its highways, roads and streets. The duty owed is to exercise reasonable care to keep these public ways in such condition that travelers who are prudent and ordinarily careful will not be exposed to injury, day or night. Louisiana's jurisprudence on the subject is built upon the theory that fault is a prerequisite to responsibility in these cases. E.g. Goodwyn v. City of Shreveport, 134 La. 820, 64 So. 762 (1914) and Suthon v. City of Houma, 146 So. 515 (La.App.1933).
Although a parish is not an insurer of the safety of travelers on its highways, roads and streets and it must keep these ways reasonably safe, they need not be maintained in perfect condition to render the parish free from liability in damages. Defects which are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. Liability will only be imposed when the defect is dangerous or calculated to cause injury. Arata v. Orleans Capitol Stores, 219 La. 1045, 55 So.2d 239 (1951); White v. City of Alexandria, 216 La. 308, 43 So.2d 618 (1949).
There is no fixed rule for determining what is a dangerous defect in a public way; the facts and surrounding circumstances of each particular case control. The test usually applied, however, *433 requires an answer to the question: Was the public way maintained in a reasonably safe condition for persons exercising ordinary care and prudence? Arata v. Orleans Capitol Stores, supra; cf. Nessen v. City of New Orleans, 134 La. 455, 64 So. 286 (1914); Allen v. Town of Minden, 127 La. 403, 53 So. 666 (1910).
In addition to the requirement that the condition which caused the injury must have been dangerous or calculated to cause injury, the cases have recognized generally that the parish or municipality must have had actual notice of the condition or that its existence continued over a period and under such circumstances that in the exercise of due diligence the parish or municipality would have had notice. Arata v. Orleans Capitol Stores,supra. See also St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964); Smith v. City of New Orleans, 135 La. 980, 66 So. 319 (1914); Allen v. Town of Minden, 127 La. 403, 53 So. 666 (1910); McCormack v. Robin, 126 La. 594, 52 So. 779 (1910); Weinhardt v. City of New Orleans, 125 La. 351, 51 So. 286 (1910); Lorenz v. City of New Orleans, 114 La. 802, 38 So. 566 (1905); Labarre v. City of New Orleans, 106 La. 458, 30 So. 891 (1901); Blume v. City of New Orleans, 104 La. 345, 29 So. 106 (1900); O'Niell v. City of New Orleans, 30 La.Ann. 220 (1878).
This latter rule, however, requiring notice to the parish, is inapplicable to a case where the defect or dangerous condition is attributable to negligent acts of the parish or its employees. It is only where the negligence relied on is the failure of the city to remove an obstruction or to repair a defect in the street, not caused by its own act or neglect, that the question of notice of obstruction or defect is an essential element. If the defective condition is due to the act of the parish itself, or its acts or negligence in connection with the acts of others, or to the acts of others as of its contractors or employees, no notice of any kind, either actual or constructive, is necessary. Mockosher v. City of Shreveport, 155 So.2d 438 (La.App.1963); Mc-Quillin, The Law of Municipal Corporations 54.104 (3d ed.)
The evidence is clear that the excavation for the culvert was made upon the authority of the police jury and under the supervision of a member of the police jury. Defense to this suit, as it is understood, is predicated upon the proposition that, although the parish did make the excavation, it followed the usual practice and filled the excavation, waiting until later to resurface with asphalt after the filling had a chance to pack; however, the condition of the excavation deteriorated at some time thereafter and the parish received no notice in time to remedy the dangerous character of the excavation.
The police juryman who supervised the excavation and laying of the culvert was unable to recall when the work was done. He could testify only that he supervised the installation and felt certain it had been done in the usual manner. The fact remains that the excavation did constitute a very dangerous condition, and there were no barricades or warnings to motorists.
It is to be inferred that Richard B. Ellis and Jesse Pickens traveled this road often in going to and from their work. Pickens, however, had not traveled the road for about four days. There is no evidence to show when Ellis last traveled the road, but it may logically be inferred that the defect was the result of a recent excavation which was not properly filled. The parish presented no evidence to refute the evidence that the work was recent.
Another inference which may be drawn is that the parish employees filled the excavation properly so that no dangerous condition was created, but the work deteriorated and its dangerous character developed within a period of two or three days due either to settling caused by a loose fill, rain, or other factors, or by packing as a result of the traffic. Even this latter *434 more favorable inference does not exonerate the parish of negligence. Its employees and the supervisor of the work knew, or should have known, that the unpacked fill would settle from one cause or another and they should have taken precautions to warn motorists traveling the road and make more frequent inspections.
These facts convince us that the defense of the parish is not well-founded. Katie Pickens was driving carefully. The excavation was dangerous. The parish was chargeable with knowledge of the work performed by the police juryman and parish employees. No notice to the parish of the dangerous defect in the road was required when the excavation was made by the parish. Its failure to place proper barriers and warning signs was imprudent. The work was of such a nature that more frequent inspections were required to ascertain its condition. These were not made. The parish is liable for the damages to Jesse and Katie Pickens. Therefore, the Court of Appeal erred in rejecting their claims. The record adequately supports the damage award of the trial judge.
For the reasons assigned, the judgment of the Court of Appeal is reversed, and the judgment of the trial court is reinstated and made the judgment of this Court.