EDWARDS, Judge.
This is a suit by Carol Fay Ortego, as the natural tutrix of the three minor children born during her marriage to Louis Dupuy, Jr., and Mrs. Sylvia Dupuy, the surviving spouse, to recover damages for the wrong *1210 ful death of Louis Dupuy, Jr., as a result of a head-on automobile-truck collision. Named as defendants are Nolan J. Brouil-lette, the Louisiana State Department of Highways and Donald G. Lambert Contractor, Inc. The Highway Department brought a third party action for indemnification against Donald G. Lambert Contractor, Inc., for any damages for which it might be liable. Donald G. Lambert Contractor, Inc., filed a third party action against two subcontractors, Morrison Engineering and Contracting Company, Inc., and Yates and Patterson, Inc., for indemnity for any damages for which it might be liable.
After trial on the merits, the trial judge, without assigning written reasons, awarded judgment in favor of Carol Fay Ortego, as natural tutrix of the three minor children, against Brouillette in the amount of $125,-000.00 plus interest; and judgment in favor of Sylvia Dupuy against Brouillette in the amount of $81,250.00 plus interest. The demands against the Highway Department and Lambert as well as all the incidental demands were dismissed.
Carol Fay Ortego has brought this appeal from the portion of the trial court’s judgment dismissing the demands against the Highway Department and Lambert. Sylvia Dupuy did not appeal, as she effected a settlement of her claim with the Highway Department and Lambert. Brouillette has not appealed; and the trial court’s judgment as concerns him has become final.
The fatal accident occurred about 9:20 p. m. on September 27, 1970 while Louis Du-puy, Jr., the decedent, was driving his 1965, Chevrolet northbound on La. Highway 1 approximately two miles north of New Roads, La. Defendant, Nolan Brouillette, was driving southbound on the same highway in his 1970 Ford pickup truck. As Brouillette approached a point approximately 500 feet from the point of collision, the right wheel or wheels of his truck slipped or were allowed to run off the concrete roadway onto the muddy shoulder. Though it had been raining previous to the accident, it was not raining at the time of the accident and the roadway was dry.
In an attempt to regain control of his truck, Brouillette, without applying his brakes, turned sharply to the left and managed to return the truck back onto the pavement. However, at this time, he still did not have control of the vehicle, and it again went off the roadway onto the muddy shoulder. Again Brouillette turned sharply to the left, but this time as he returned to the roadway he crossed the center line, veered into the other lane and struck the Dupuy vehicle head-on, killing Louis Dupuy, Jr., instantly.
The sole issue presented for review is whether or not the Highway Department and/or Lambert are liable for the accident. Quantum is not at issue.
Sometime before the accident, the Highway Department had awarded a contract for the widening and repair of La. Highway 1 between New Roads and Morganza to Lambert. Signs were erected at the beginning and end of the project warning motorists of the construction. Reduced speed limit signs (45 m.p.h.) were placed at specified intervals along the construction. Additionally, portable signs and road delineators were placed at the point where construction was taking place each day. These portable signs warned of various construction hazards such as men working, soft shoulder, low shoulder, etc. The record indicates that all signs met applicable specifications.
There were no signs in the area of the accident, nor were there any road deline-ators marking the edge of the concrete roadway.
Plaintiff contends that there was a drop-off between the concrete roadway and the shoulder. Further, she contends that this drop-off was caused by the excavation of the shoulder preparatory to widening the roadway. Finally, she contends that the drop-off was a contributing cause of the accident; and that the Highway Department and Lambert were negligent in failing to safeguard and warn the public of the “defects” in the shoulder created by their actions.
*1211 Since the trial judge did not assign reasons for the dismissal of the claim against the Highway Department and Lambert, we must conclude that both were found free of negligence. There is ample evidence in the record to support this conclusion. We affirm. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
In Hale v. Aetna Casualty & Surety Company, 273 So.2d 860, 862 (La.App. 2nd Cir. 1973), writ refused La., 275 So.2d 867, the Second Circuit, citing earlier cases, stated:
“We do not find any serious dispute as to the law. The highway department owes a duty to maintain its roads in a safe condition so as not to expose the traveling public to any undue hazards. This duty includes the obligation to timely repair or make safe any defects or conditions of the roads of which it has knowledge or should know about. Any person or firm contracting with the highway department to repair a road likewise owes a duty to the public to perform the contract in such a manner as not to expose those using the roads to any dangers which could be prevented by the use of ordinary and reasonable care. This obligation on the part of the highway department and the contractor imposes the duty adequately to warn motorists of the existence of any dangers created by the road repairs.”
In cases where the defective condition is due to an act chargeable to the department or its agents, no notice of any kind, either actual or constructive, is required. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975).
The first question to which we address ourselves is whether or not there was, in fact, a defect in the roadway or shoulder. All the testimony in the record indicates that there was no defect in the concrete roadway itself. However, the investigating officer stated in his report that the shoulder was defective. At trial, he clarified this by testifying that this “defect” was due to the road construction. He further testified that there was a drop-off between the roadway and the shoulder. Additionally, plaintiff introduced various photographs of the roadway, some taken the day after the accident and others taken more than a month later, to show that there was a drop-off from the road onto the shoulder. While this evidence and the other testimony in the record indicates that there was a drop-off, the plaintiff has failed to prove the exact nature, extent and location of the drop-off vis-a-vis the accident scene.
Assuming, arguendo, that the drop-off, as alleged by plaintiff, was, in fact, a contributing cause of the accident, the testimony in the record fails to prove that the drop-off was the result of road excavation or any other acts committed by the Highway Department or the contractor, Lambert.
The Highway Department’s assistant chief construction engineer and the project engineer both testified that although there was construction occurring along La. 1, no excavation work had been performed in the area of the accident. The aforementioned construction was confined to work on the culverts alongside the road. The project engineer, after examining the photographs admitted into evidence by plaintiff testified that the drop-off was definitely not the result of construction activities. He stated that the presence of grass on the shoulder was inconsistent with excavation activities. He opined that the drop-off apparently was caused by the passage of multi-wheeled trucks, the outside wheel of which ran off the pavement.
The other testimony alluding to construction in the area of the accident is non-specific as to the nature of the construction, and does not establish that the drop-off was or was not caused by excavation, or that any excavation had occurred.
We conclude that any drop-off at the scene of the accident was not the result of any acts committed by the Highway Department or Lambert.
Accordingly, to hold the Highway Department for failure to repair or warn of the defective shoulder, it was necessary for plaintiff to prove that it had actual or constructive notice of the defect. This was not shown.
*1212 For the reasons assigned, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.