(51 South. 286.)

No. 17,545.

WEINHARDT v. CITY OF NEW ORLEANS.

(Jan. 17, 1910.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS (§ 768*)—STREETS —DUTY TO KEEP IN REPAIR—NEGLIGENCE.

A municipality must keep its streets and sidewalks in a condition sufficiently safe to enable pedestrians to cross gutters at intersections without danger; and where it is customary to have three planks as a crossing over a gutter, and through a failure to keep the walk in order only one plank is left across the gutter, this failure constitutes negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1624; Dec. Dig. § 768.*]

2. MUNICIPAL CORPORATIONS (§§ 763, 817, 819*) — STREETS — INJURY FROM DEFECTS — TIME TO REPAIR.

The municipality must have had sufficient time to make the needed repairs in order to render it liable. Abbott; Municipal Corporations, vol. 2, p. 2321. "The burden is on the defendant to plead and prove that it did not have sufficient time in which to make the repairs before the injury was received." Abbott, vol. 3, p. 2329. The city has failed to prove want of sufficient time.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1615, 1725, 1739; Dec. Dig. §§ 763, 817, 819.*]

3. MUNICIPAL CORPORATIONS (§ 791*)—DEFECTIVE STREETS—LIABILITY FOR RESULTANT INJURY—NOTICE OF DEFECT.

The corporation must also have notice of the bad condition of the walk in order to render it liable; but the neglect to make the repairs for a considerable time gives rise to an implication which is considered a sufficient notice to make the city liable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1648; Dec. Dig. § 791.*]

4. MUNICIPAL CORPORATIONS (§ 790*)—DEFECTIVE STREETS—INJURIES—SUFFICIENCY OF NOTICE—NOTICE TO COUNCILMAN.

Notice to a councilman that a walk is in need of repair is sufficient notice to the city, for a councilman is charged with a duty in regard to the repairs of streets.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1645; Dec. Dig. § 790.*]

*(Additional Syllabus by Editorial Staff.)*

5. DAMAGES (§ 130*)—AMOUNT—PERSONAL INJURIES.

A person injured by falling on a defective sidewalk suffered a complete vacuate dislocation of both bones of his left arm, suffered great pain, and the ulnar nerve was paralyzed; the effect being to cause complete disability of the lower part of the left arm, which was 2½ inches shorter than the other. He had not entirely recovered at the time of trial, and had expended about $1,200 as a result of the injuries. *Held,* that a recovery of $6,200 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370, 371; Dec. Dig. § 130.*]

Appeal from Civil District Court, Parish of Orleans; Fred. D. King, Judge.

Action by Charles W. Weinhardt against the City of New Orleans. Judgment for plaintiff, and defendant appeals. Affirmed.

John J. Reilley, Asst. City Atty., for appellant. Carroll, Henderson & Carroll, for appellee.

BREAUX, C. J. Plaintiff, the assistant custodian of the customhouse and post office, brought this suit to recover the sum of $21,200 for alleged injuries sustained in a fall through a defective crossing over a gutter. The case was tried by jury. Verdict was for $6,200.

The injuries complained of were suffered on the 7th of October, 1907, at about 9 o'clock on a dark night. He fell while walking on the upper river side of Patton and Webster streets on his way to a drug store near by, about three blocks from his home, in the neighborhood in which he has lived since about 18 years.

His arm was hurt and his body bruised in the fall.

In attempting to cross the gutter, he stepped aside from, and did not step on the one board remaining of, the crosswalk.

This crosswalk consisted of three planks of about 12 inches each in width.

In the diagram which we annex for reference, the planks are identified by the letters A, B, C.

The plank A was not in the crossing at all. The plank B was not in its place. It had tilted over at an angle of about 45 degrees, and no longer answered the purpose for which it had been placed in the crossing, but was an impediment to pedestrians who attempted to cross. Plank C was all that remained of the crossing at the time that plaintiff attempted to cross.

There was no light at the corner of Webster and Patton streets.

Plaintiff charges that his injury was the result of defendant's negligence in not keeping up its sidewalk at this place; that if the city had not neglected this crossing as it did he would not have fallen.

The bad condition of this crossing dates back some time. Some of the witnesses testified as far back as a year before the accident that the bridge was in bad repair. Others remember to have seen it in that condition about a month before the plaintiff fell.

There cannot be any question. The weight of the evidence shows that it had been out of repair some time prior to plaintiff's fall.

Two of plaintiff's witnesses testified that the department of public works had been warned of the necessity of renewing or repairing this crossing; that there had been requests made and notices given to the department to repair this bridge; and that it follows that the city was well aware of the necessity of having it put in good condition.

After the plaintiff had fallen, and had suffered the injuries of which he complains, the crossing was repaired; other boards were put in, and a light was furnished on the petition of persons residing near.

The defendant denied liability, and urged that the plaintiff was guilty of contributory negligence.

There is no question but that a municipality must keep its streets and sidewalks in a condition sufficiently safe to enable those who walk over them to cross the gutters at intersections without imminent danger.

It must be said, however, that the city is not an insurer of the safety of the pedestrian, and that it must appear that the danger was owing to the negligence of the city. There is no negligence for which she can be held, unless it appears that she has been warned or notified, either expressly or by implication.

The neglect to make the repair for a considerable time gives rise to an implication which is considered in the light of a sufficient notice to render the city liable.

The foregoing finds support in Blume v. New Orleans, 104 La. 348, 29 South. 106, and Laurenz v. City, 114 La. 862, 38 South. 587.

Of course, the defect must exist, and after the defect the municipality must have had reasonable time for its repair. In other words, there must a time elapse in which to learn the facts. Abbott, Municipal Corporations, vol. 2, p. 2321.

The evidence, as we have already stated, shows that the condition had been bad a number of months before the plaintiff fell. The defect was not slight. We have seen that there was one board missing entirely. The other had fallen from its place in the crossing. The remaining board was not sufficient on a dark night for a pedestrian to cross with safety; nor was it to be expected that a pedestrian would become a high stepper, and step across the gutter without bothering himself about a crossing. If a 12-inch board were adopted as a sufficient width, it might be different; pedestrians would accustom themselves to that width. As crossings are made with three 12-inch boards, no one would consider a board of 12 inches as wide enough to serve the purpose of the average pedestrian.

We give no importance to the alleged want of light. If that were all, plaintiff in our

opinion would have no case. We have referred to it because it was one of plaintiff's allegations, and evidence was admitted in regard to it.

We will mention that the fall of plaintiff was not in a remote part of the city, where pedestrians do not often pass. It was in a settled portion, where residents have greater rights in regard to streets, sidewalks, and crossings.

The evidence also proves that notice of the defect had been given to a councilman. This councilman testified that he had directed the complaint clerk of the office of the commissioner of public works to make an entry of this notice.

The councilman was grossly mistaken, or the clerk. The clerk testified that there is no such entry in the books, and that he received no notice.

The councilman was corroborated in his testimony. The one who had made the request of him testified as to the request, and in addition he said he had written a letter to the office of the commissioner of public works. The following is an excerpt from the testimony of witness Mr. Leche:

"Q. Are you positive that you wrote this letter to the commissioner of public works before the accident? A. Yes, sir; I am positive."

The councilman, Mr. Bisso, in testifying was very emphatic. He had no interest in the matter whatever; nothing to gain, nothing to in the least influence him in the matter. He testified that the bridge was in bad condition, and says that witness Leche asked him to "report to the commissioner of public works office and have it repaired," and—

"I did so within the next two or three days * * * I know it was reported to the commissioner of public works office, because I generally stood there and dictated to the clerk where the streets were, where the intersection was, and which side.

"Q. The note of it was made in your presence by the clerk in the office of the commissioner?

"A. Yes, sir; I am positive."

This witness also states further:

"When Mr. Leche reported this bridge to me, I immediately reported it to the office of the commissioner of public works. I think it was about two weeks after this I had occasion to call on Dr. Ernst, and I met Mr. Weinhardt coming into that office as I was going out, and I said, 'Mr. Weinhardt, what is the matter; what has happened to you?' and he said, 'I broke my arm, for I fell on the bridge, corner Webster and Patton streets.' I told him that I had reported the cause of the accident two or three weeks before that date."

This witness does not seem certain as to time. Taking his evidence in connection with that of the other witness before named, it may be inferred that his report was of a date anterior to the accident.

The contention of defendant is that this notice of the defective crossing was given to the councilman after the accident.

Mr. Leche, who testified as a witness, swore, as just above stated, that he gave the notice before the accident. The jury, who heard him make this statement, observed him, believed him. He is not directly contradicted by any one. True, Mr. Bisso is not quite positive about the date of the notice. He did not remember the date, and in seeking to arrive at the time by referring to other incidents he was not fortunate; he did not fix the date with absolute certainty.

Taking the evidence of these two named witnesses together it does fix the date of the notice prior to the accident.

We quote the following:

"The burden is on defendant to plead and prove that it did not have reasonable time in which to make the repairs before the injury was received." Abbott, vol. 3, p. 2329.

The city has failed to prove want of sufficient time to make necessary repairs; also want of sufficient notice.

But, be that as it may, the crossing had been in bad repair for some time. It devolved upon the city to repair it.

Again, conceding that the councilman did not notify the department, although he has sworn, as we have just stated, the notice to him was sufficient, for a notice to a city councilman is notice to the city. He has a duty to perform in regard to streets. Abbott, vol. 3, p. 2330.

There are a number of decisions directly pertinent. City of Columbus v. Strassner, 124 Ind. 482, 25 N. E. 65.

The same view is expressed in Smith v. City of Des Moines, 84 Iowa, 685, 51 N. W. 77; Cook v. City of Anamosa, 66 Iowa, 427, 23 N. W. 907.

There are still other decisions, quite a number.

Having come to the conclusion that the verdict of the jury was correct in finding that there was negligence on the part of the defendant, we take up the matter of the extent of the injuries suffered.

The distinguished surgeon, by whom plaintiff was attended, has given a circumstantial description of the wounds, and after having described them thoroughly he gave his statement as to what was done by the attending physicians to relieve the plaintiff.

We will not reproduce the entire statement; it shows that plaintiff had greatly suffered; the pain was intense. There was complete vacuate dislocation of both bones, but especially of the ulnar. The ulnar nerve was paralyzed. The effect was to cause the complete disability in the use of the left arm. The arm injured was 2½ inches shorter than the other.

He had not entirely recovered when the trial was held, although, as we understand, he was considerably better. He did not have the complete use of his left arm, and the evidence shows that the lower part of his arm is almost entirely disabled.

The expenses incurred by him were about $1,200.

Judgment affirmed.