(66 South. 319)

No. 19836.

SMITH v. CITY OF NEW ORLEANS.

(Oct. 19, 1914.)

*(Syllabus by the Court.)*

MUNICIPAL CORPORATIONS (§§ 764, 795*)— DEFECTIVE CROSSINGS—INJURY TO PEDESTRIAN—LIABILITY OF CITY.

The law imposes upon the city of New Orleans the mandatory duty of keeping its streets, and the bridges and coverings over gutters and ditches which form parts of the streets, in such condition as not to endanger the lives and limbs of those who use them; and, as such bridges and coverings, when made of wood, are subject to rapid decay, the proper discharge of that duty requires that they should be inspected periodically, and that the ascertainment of their dangerous condition should not be left either to chance observation or to resulting accidents; hence the failure to make such inspection is negligence, for which the city may be held liable, in damages, to one sustaining injury thereby.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1616–1620, 1654; Dec. Dig. §§ 764, 795.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Mrs. Elizabeth Smith against the City of New Orleans. From judgment for defendant, plaintiff appeals. Reversed and rendered.

E. M. Stafford and H. W. Robinson, both of New Orleans, for appellant. John J. Reilley, Asst. City Atty., and I. D. Moore, City Atty., both of New Orleans, for appellee.

## Statement of the Case.

MONROE, C. J. Plaintiff left her residence on Sunday morning, January 23, 1910, and, proceeding to the nearby corner of Prytania and Antoine streets, in order to take a car, walked upon the plank covering of the gutter, or ditch, which traverses Prytania street at that point, extending from the curb to the railroad track and serving as a crossing for pedestrians over the unpaved street, and, in so doing, stepped in, or upon, an ob-

long hole which had been rotted in one of the planks of the covering, and, the rotten wood by which the hole was surrounded giving way and the hole becoming thereby enlarged, her foot and leg went through and she sustained injuries, on account of which she has brought this action in damages. The court a qua rejected her demand, and she has appealed.

The uncontradicted testimony shows that pedestrians must either make use of the crossing in question, or some other, as the street is not paved; that the hole in, or upon, which plaintiff stepped had been visible, and had been observed, and avoided, for about a month prior to the accident, and was, then, from 6 to 8 inches in length by 1½ or 2 inches in width; that the city authorities received no notice of its existence until the day of, and after, the accident; that they had the covering repaired on the following day; and that the officer in charge (being the superintendent in the department of the commissioner of public works) then found that which he thus describes, to wit:

"I found a piece of the board had decayed away, like though it was soft. It measured 2¾ inches wide and it was 6 feet long, and it was broken into about three pieces. It showed as though somebody had stepped on it, and (it) went down and broke, because all the pieces were laying in the ditch, at the time."

The superintendent, further testifying, gives the bounds of the district over which his jurisdiction extends, and says that there is no other superintendent within that territory than himself, but that there is a foreman for each ward; that he was unable to say when he had inspected the "bridge" in question prior to the accident; that if in going along he noticed anything defective, he would at once investigate it, but that if he noticed nothing, he would make no investigation; that he made no "systematic inspection, from street to street and corner to corner of the street bridges," and had never done so; and

that he did not think that any such inspections had been made by any employé of the city; that he did not know that any inspection of the "bridge" in question had been made for the city within, say, six months before the accident; that if he had seen the hole in question, as it appeared before the accident, he would have regarded it as a sufficient defect to demand repair. The physician who attended plaintiff testified that he visited her for several weeks; that she had an extensive wound in the left leg, and bruises about the hip and shoulder; that "the extensive laceration was right between the ankle and the knee, along the calf of the leg and the shin bone—the whole thing was just ripped up"; that the injuries were very painful, and that, by reason of the fact that plaintiff was suffering from a disease, the shock that she received was very serious, and came near causing her death; that he made no bill against plaintiff, but that his charge will probably be $75.

### Opinion.

"There is no question [this court has said] but that a municipality must keep its streets and sidewalks in a condition sufficiently safe to enable those who walk over them to cross the gutters at intersections without imminent danger." Weinhardt v. City, 125 La. 355, 51 South. 288.

And it is obvious that, inasmuch as the "bridges," as they are called, or crossings, of the gutters and the coverings of the ditches, which extend across many of the streets, are of wood, subject to rapid decay, the only way by which it can be known whether they are safe or not, save through the accidents by which people are injured, is through periodical inspections.

In Lorenz v. City of New Orleans, 114 La. 802, 38 South. 566, it was found by this court that a little girl had sustained a dislocation of the hip and other serious injury by having her foot and leg go through the rotten covering of a public fire well. It was said in the opinion (among other things):

"The plank covering of the well was even with the surface of the street and formed part of the public highway. The hole in the rotten plank was about four inches wide. * * * The city charter makes it the mandatory duty of the municipal authorities to keep all streets, bridges, and crossings in repair, and places them under the charge and superintendence of the commissioner of public works, who is required to report their condition, from time to time, to the council. This officer and his subordinates are presumed to do their duty, and to keep themselves posted as to the condition of the streets and bridges under their supposed constant * * * supervision. They had the means of knowledge, and ought to have known and remedied the defect. Dillon, Mun. Corp. 1025, and notes. The plank was rotten, and the hole, produced by decay, had been visible for several weeks, if not months. * * * If the covering had been inspected, the existence of the hole and the rottenness of the plank would have been discovered. * * * It has been held that a city is bound to take notice of the decay of wooden sidewalks. Furnell v. City of St. Paul, 20 Minn. 117 (Gil. 101). The reason is stronger where the danger is greater, as in case of bridges and covered wells. We cannot accept the doctrine that a city can permit such structures to rot, and then avoid liability on the ground of want of actual notice of their dangerous condition."

The doctrine of the cases cited finds support in O'Neill v. City of New Orleans, 30 La. Ann. 220, 31 Am. Rep. 221; Guéblé v. Town of Lafayette, 121 La. 909, 46 South. 917; McCormack v. Robin, 126 La. 598, 52 South. 779, 139 Am. St. Rep. 549 (and authorities there cited); McQuillan on Municipal Corporations, §§ 2813, 2814.

We conclude that plaintiff is entitled to recover, and it is accordingly ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there now be judgment in favor of plaintiff and against defendant, the city of New Orleans, in the sum of $500, with legal interest thereon from the date upon which this judgment shall become final, and all costs.

PROVOSTY, J., absent, takes no part herein. O'NIELL, J., takes no part not having been a member of the court when the case was argued.