## KERNSTOCK v. CITY OF NEW ORLEANS.*
### No. 14202.

Court of Appeal of Louisiana. Orleans.
April 10, 1933.

Nat W. Bond and Henry B. Curtis, both of New Orleans, for appellant.

Guion & Upton and K. C. Barranger, all of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff and a young friend, Henry Richard Nuss, were injured when the bridge rail, against which they were leaning, gave way and they fell to the bottom of the drainage canal which was under the bridge.

Charging that the municipality was negli-

---

*Rehearing denied May 22, 1933.

372

gent in failing to maintain the said rail in good condition plaintiff seeks judgment for $5,693.

Defendant municipality contends that it had no knowledge, either actual or constructive, of the condition of the rail of the bridge and that, therefore, it is not liable, and it also asserts that if there was negligence in the failure to discover that the rail was defective plaintiff, himself, was contributorily negligent because he leaned against a manifestly defective rail and, because, he had gone upon the bridge in spite of the fact that there was a partial barricade erected across one end of it on which barricade was a sign bearing the warning "S. & W. B. Bridge Closed."

From a judgment against it in the sum of $2,100, the city of New Orleans has appealed.

There is no evidence that the municipal authorities had actual knowledge that the rail was defective and, since the time during which the rail was defective is not shown, the argument is made that in the absence of evidence showing that the condition had existed for such time as would charge the municipal authorities with constructive knowledge, there can be no recovery because of the well-settled jurisprudence to the effect that municipalities are not rendered liable for accidents resulting from defects in streets, bridges, crossings, or other structures except where it is made to appear that there was knowledge either actual or constructive in those charged with the duty of maintaining such structures. As authority for such doctrine our attention is called to the following decisions in this state: Wiltz v. City of New Orleans, 2 La. App. 444; Minor v. City of New Orleans, 3 La. App. 448; Brown v. City of New Orleans, 7 La. App. 611; Collins v. Lyons, 9 La. App. 736, 120 So. 418.

It appears, however, that some two and one-half or three months prior to the accident, the superintendent of canal bridges in the employ of defendant went to the bridge in question to make repairs to the surface portion of it and, it also appears from his testimony that, at that time, he saw no defect in the rail in question, although he states that he made a superficial examination. It is impossible to believe, however, that the rail in the condition in which it was at the time of the accident could, some two and one-half or three months earlier, have shown no apparent defect.

■ We conclude that had the superintendent made an examination of the rail he could not have failed to discover its true condition. It will not suffice for a city to set up as a defense a want of actual knowledge where it is shown that a reasonable compliance by any particular employee with the requirements of his position would have afforded such knowledge.

We do not mean to say that it is necessary that inspections be made at any particular

intervals, though in some cases constructive knowledge could easily result from failing to make inspections with reasonable frequency, but we do say that where an inspection is made the city must be charged with knowledge of such condition as any competent inspector should have discovered. It will not do for such inspector to merely say that he did not see the defect.

Defendant is thus bound by such knowledge as its superintendent should have acquired when he inspected the rail, and we think that he should have, by that inspection, received knowledge of the defect here complained of.

■ Even if no such inspection had been made, liability might well have resulted from failure to inspect. Where structures are made of wood or other perishable materials and as a result of the natural decay in those materials defects manifest themselves, in order to escape liability, a municipality must show that it made reasonable inspections and at proper intervals and that in spite of such inspections the defects, nevertheless, came into existence. The doctrine contended 'for by the city to the effect that there is no liability unless the municipality has either actual or constructive knowledge may well be applied to holes in sidewalks, or in street pavement which may not appear as the result of normal and expected wear and tear, but where the city uses material which must, in the ordinary course of events, either wear away or rot, then the city must make such periodical inspections as the nature of the material renders advisable.

In Elliott—Roads & Streets, vol. 1, page 95, we find: "The law requires that the governmental corporation owning or controlling a bridge, under a legal duty to keep its bridges safe for travel, shall exercise a reasonable supervision over it and cause such inspections to be made as ordinary care and diligence demand and this requires that due regard be had in conducting inspections to the liability of timber to decay."

In Corpus Juris, vol. 43, "Municipal Corporations," page 1053, the rule is stated as follows: "Common prudence dictates that a city in the exercise of its duty to care for the safety of the streets should look after the effects of long wear upon a structure in a street, which is likely to become dangerous in the course of time, and the knowledge of the action of the elements on structures of wood, and of the liability of timber to decay under certain conditions, is to be attributed to municipalities, just as to natural persons. It necessarily follows that it is the duty of a municipality to exercise ordinary or reasonable care by sufficient inspection to anticipate and detect such natural deterioration or decay and to guard against injuries therefrom."

That the jurisprudence in this state coin-

cides with the above general statement is manifest from a reading of the decision of the Supreme Court in Smith v. City of New Orleans, 135 La. 980, 66 So. 319, in the syllabus of which, written by the court, appears the following: "The law imposes upon the city of New Orleans the mandatory duty of keeping its streets, and the bridges and coverings over gutters and ditches which form parts of the streets, in such condition as not to endanger the lives and limbs of those who use them; and, as such bridges and coverings, when made of wood, are subject to rapid decay, the proper discharge of that duty requires that they should be inspected periodically, and that the ascertainment of their dangerous condition should not be left either to chance observation or to resulting accidents; hence the failure to make such inspection is negligence, for which the city may be held liable, in damages, to one sustaining injury thereby."

In the body of the opinion the court said: "And it is obvious that, inasmuch as the 'bridges,' as they are called, or crossings, of the gutters and the coverings of the ditches, which extend across many of the streets, are of wood, subject to rapid decay, the only way by which it can be known whether they are safe or not, save through the accidents by which people are injured, is through periodical inspections."

In Lorenz v. City of New Orleans, 114 La. 802, 38 So. 566, 567, the court with reference to the duty to inspect said: "If the covering had been inspected, the existence of the hole and the rottenness of the plank would have been discovered. Hence there was no inspection, or there was neglect to repair. Negligent ignorance is equivalent to actual knowledge."

■ We think that plaintiff was not negligent in going upon the bridge because, the warning sign "Street Closed" was not intended to advise pedestrians that the bridge was unsafe. The evidence shows that the sign had been placed there not by the bridge building or repairing department of the city, but by the sewerage and water board, and that the purpose of it was to warn vehicle drivers that the street on the far side of the canal was not open to vehicular traffic. In fact, the barricade, on which the warning sign was hung, did not extend completely across the bridge, but only obstructed enough of the driveway to prevent vehicles from passing and there was left open a passageway wide enough for pedestrians. It is shown that the opening was regularly used by persons going across the canal and to and from the street cars which were in operation along one side of it. Since the sign was not intended for and did not serve as a warning to pedestrians, it cannot be said that plaintiff in passing upon the bridge was guilty of negligence on his part.

■■ Counsel for plaintiff contends that defendant should not be heard to argue that plaintiff was negligent in leaning upon the rail and he bases this contention on his view that such contributory negligence has not been pleaded by defendant. In other words it is said that although, in the answer is, found the legal conclusion that there was contributory negligence, the only affirmative fact alleged is that the said contributory negligence resulted from plaintiff's "going upon the bridge despite the warning sign aforesaid." Counsel for plaintiff would persuade us that no where in the answer can defendant be found to have charged that it was contributory negligence for plaintiff to lean against the rail. To charge contributory negligence is to charge a conclusion of law and, unless there are alleged facts from which the legal conclusion may be drawn, then the charge may as well not be made. But we are not all certain that under the allegation that it was negligence to go upon the bridge, it would be proper to exclude evidence tending to prove that improper use of a portion of the structure was the real act of contributory negligence relied upon. At any rate the question presented on this particular phase of the matter is of no great importance, since we have reached the conclusion that plaintiff was not guilty of contributory negligence and that, even had it been specifically charged that his act in leaning upon the rail was contributory negligence, nevertheless, he should recover because what he did might well have been done by any reasonably prudent person under the same circumstances.

Our attention is directed to several cases supporting the view entertained by counsel for the city to the effect that rails on bridges are intended merely as guides to inform passersby as to the location of the edges of the bridge and are not to be used as seats or to be leaned against. They cite Orcutt v. Kittery Point Bridge Co., 53 Me. 500, in which the court considered whether or not it was negligence for one of a company of soldiers while halting upon a bridge to lean against a rail which proved defective. The court said: "Looking now to the plaintiff's own statement of the manner in which his misfortune occurred, it appears that, the captain of the company to which he belonged having called a halt upon the bridge, he leaned his back against the railing to rest and wait further orders,—that, when the order to fall in was given, he was 'half leaning, half sitting against the railing,'—that, his impression was that two or three men were sitting on the railing a short time before, but no one was on it when it broke,' and that, as he sprang forward to take his place in the ranks, the railing, being rotten, gave way and he fell off the bridge. It was for the safety of those who should be in the legitimate use of the bridge and its appurtenances

as passengers, only, that the corporation was bound to maintain the railing. It is plain from the plaintiff's statement that he was using the railing for no such purpose and that his unauthorized use of it was the immediate cause of the accident."

Our attention is also directed to Stickney v. City of Salem, 3 Allen (Mass.) 374, in which the court said: "A city or town is not bound by law to erect and maintain railings for persons to sit upon or lean against. They are not intended to be used for the convenience and accommodation of those who seek for a place of rest, while they stop in the highway to lounge, or to recover from fatigue, or to engage in conversation. If a person uses them for such purposes, he does it at his own risk. A town or city cannot be held liable for damages which are sustained by persons in consequence of improper or unauthorized uses of the highway, which occasion or contribute to accidents."

In spite of the respect with which we look upon such authorities from other jurisdictions we cannot be persuaded that the mere leaning, upon what appears to have been a very substantial rail, constitutes contributory negligence or can be characterized as an attempt to use the rail for an unintended or improper purpose.

Plaintiff stood with his back to the rail, rested his two elbows upon it, and placed the heel of one of his shoes upon the lower rail. In that position there was no great weight upon the rail and we cannot see that there was any negligence in plaintiff in assuming it. Had the rail been very light in construction or had there been anything about it to create in the mind of an ordinarily prudent person any fear that such action might break the rail then, of course, plaintiff could not recover. But such was not the case here.

The injuries complained of were rather serious. Plaintiff's pelvis bone was broken in three places and a piece was chipped off of his hip bone. He remained in the hospital about two months and could not return to work until nearly eight months after the accident. Prior to his injuries he had been earning about $33 per week. Strangely enough he produced no doctor to corroborate his statements, but there is in the record no testimony or other evidence which would serve in any way to contradict his recitals as to the extent of his injuries and for this reason we must accept as true what he, himself, says. In view of the length of time during which he was disabled and the multiple fractures which he sustained and the pain and suffering which no doubt were great, we believe that the amount allowed below, to wit, $2,100 was not excessive.

There is no yardstick by which injuries may be measured and while we might, had the matter been presented to us as res nova, have rendered a judgment for an amount slightly less than that awarded below, nevertheless, it cannot be said that the estimate of our brother of the district court was manifestly erroneous.

The judgment appealed from is affirmed. Affirmed.