The plaintiff filed this suit against the City of New Iberia to recover damages in his own behalf in the sum of $309.50 and in behalf of his minor son, Albert Delahoussaye, Jr., in the sum of $10,500, on account of personal injuries received by said minor son on February 16, 1946, when he fell off a bridge across a ditch or canal in said City.
It is charged in plaintiff's petition that the bridge on which Delahoussaye, Jr., fell was defective and that the City had actual or constructive notice of the defective condition of this bridge; that the City dug a drainage ditch through the City some four years ago, which ditch is about 6 feet wide and four feet deep; that two or three years ago, the City built sidewalks along the avenue across which this ditch passes, and in order to afford a passage of the sidewalk over this ditch, the City built a bridge over this ditch with boards about twelve inches wide; that said bridge had no side rails and no supports at the bottom to keep the bridge from sagging; that because of the sagging of the middle plank in said bridge and the other defects permitted to exist in the bridge, the said minor tripped on the center plank and fell on his back and then fell to the ground, injuring his side and spleen, requiring an operation for the removal of his spleen.
The answer of the City is a denial of negligence on its part, and a denial of notice, actual or constructive, of any defects in the bridge, if any defects existed; and, in the alternative, it is alleged that the injury caused to young Delahoussaye resulted from his own careless and reckless use of said bridge by jumping up and down on the bridge while crossing it.
The trial judge rendered a judgment in favor of the defendant on the ground that the City did not have any notice, actual or constructive, of the defective condition of the bridge. From the judgment of dismissal, plaintiff has appealed.
There are four principal questions presented in the case: First, was the bridge defective; second, did the City have actual or constructive notice of the defective condition of the bridge; third, if the City was negligent, was the minor child guilty of such contributory negligence as to bar his recovery; and fourth, if there is liability on the part of the City, the amount of damages?
The evidence shows that the bridge in question forms the sidewalk across a six foot ditch or canal and the bridge is the same width of the sidewalk — three feet. The bridge was built of three planks eighteen feet long and each plank 12 inches wide and three inches thick. Both ends of the boards extended over both sides of the ditch about six feet. When the bridge was first constructed it had braces or supports under it to keep the boards from sagging. For some four or five months before the accident these braces or supports had either washed out or had rotted and given way so that the middle plank was resting on the ground on each side of the ditch lower than the other planks, and when a person would walk across the bridge the middle plank would sag. Just how much this center plank would sag is variously estimated by the witnesses *Page 77 
from one inch to twelve inches. There was no railing on either side of the bridge.
Two witnesses testified that they fell on this bridge a few months before the Delahoussaye boy fell on it, one of these witnesses testifying that he quit passing over the bridge after he fell on it. There is no doubt but that the middle plank across the ditch was lower than the other planks, and when a person would cross the bridge this plank would sag and shake. The City had the bridge repaired the same day the boy was injured by putting braces under the boards and railings on the sides.
[1, 2] A municipal corporation owes a duty to the public to keep its sidewalks, streets and bridges in such condition that pedestrians who are ordinarily careful will not be exposed to danger. Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58. A bridge made of three long planks resting on the ground or bulkheads across a six foot ditch with no railings on the sides and with the planks uneven and the middle plank sagging when a person puts his weight on it could hardly be said to be a safe bridge where many pedestrians pass over the bridge daily.
Mr. Lopez who lives on the opposite side of the street from where the boy fell testified that he told the street commissioner in September, 1945, that children were playing on the bridge and that it needed some repairs to which the commissioner replied that he was too busy at the time putting down gravel. The street commissioner denied that he had such a conversation with Mr. Lopez. This is about the only evidence in the record tending to show that the officials of the City had actual notice of the defective condition of the bridge before the accident occurred. The trial judge made the following comment on this part of the testimony: "It seems however, that Mr. Lopez's complaint can hardly put the City on notice that the bridge was unsafe for pedestrian travel, as it mentioned only the fact that children would play on it and that in doing so the bridge would sway."
We do not understand the trial judge to mean that Mr. Lopez did not have the conversation with the street commissioner about the bridge, but that the conversation was not of such a nature as to give him actual notice of the condition of the bridge. If Lopez did have the conversation with the street commissioner which he related, it was certainly of such a nature as to put this official on notice that something should be done about the bridge. While the trial judge found that the bridge had been in a defective condition for not over five months, he concluded that this was not a sufficient length of time for the bridge to remain in this condition to charge the City with constructive notice of the condition by reason of its duty to make inspections at periodic intervals.
The street commissioner testified that he makes inspections of the streets every six months or oftener. He says there are 150 to 200 bridges in the City, but he admits that most of these are small one plank crossings placed over the ditches by private individuals to enable them to get to their property. He admits that the bridge on which the boy fell is about the longest bridge in the City. He says that the bridge was inspected before the boy fell on it, but he could not say how long before the accident occurred.
[3] The decided preponderance of the evidence is to the effect that this bridge had been in a defective condition for at least four or five months before the accident. In our opinion, this was sufficient time for the proper city officials to find out about the condition of one of its longest bridges and one over which many pedestrians passed daily, and concerning which at least some kind of complaint had been made to the street commissioner some five months before the accident.
It was held in the case of Smith v. City of New Orleans,135 La. 980, 66 So. 319 (a case similar in some respects to the present case), that where a city makes bridges and coverings of wood which is subject to rot and decay, the municipality is under the duty to inspect these structures regularly in order to ascertain their condition and make proper repairs where, because of decay in some of the material, the structure might become dangerous. In the case of Parker v. City of New Orleans, La. App., *Page 78 1 So.2d 123, the court held that the city had constructive notice of a defect in the sidewalk where the condition had existed for two months. See also Kernstock v. City of New Orleans, La. App., 147 So. 371.
Considering the nature of the bridge in question, its use and importance, we are of the opinion that, if the City did not have actual notice of the condition of the bridge, it is charged with constructive notice of its defective condition.
The next and most serious question is whether or not young Delahoussaye was guilty of contributory negligence. He was about eleven years old at the time of the accident and was in the third grade at school. His father and mother had warned him to be careful in crossing this bridge. He had crossed the bridge many times before. The accident happened in broad open daylight. He says he was walking on the side plank and he nearly fell in the ditch and then put his foot on the middle plank and this plank bounced and he fell on the bridge and rolled over in the ditch. He says he was not jumping or running on the bridge, but that he was walking "kinder fast." On being asked how long he had known the bridge was supposed to be in bad condition, he replied:
"A few months. You would walk on it and it would bounce back." Plaintiff's witness Lopez testified that the boy was trotting like a child as he came over the bridge.
[4, 5] A child under twelve years of age, even though he is capable of contributory negligence, is not held to the same degree of care and caution as is required of a mature person. Whether or not such a child is guilty of such contributory negligence as to bar recovery depends on his capacity, his degree of maturity and the particular circumstances of the case.
In the case of Lorenz v. City of New Orleans, 114 La. 802, 38 So. 566, 567 a girl nine years old was held not guilty of contributory negligence when she stepped in a hole in the street during the twilight period. The girl was running across the street and her foot struck the covering of a fire well her foot went through a hole in a rotten plank, injuring her hip. The court said in that case:
"We do not think that there is any good ground for the plea of contributory negligence, based on the facts that the child on the previous evening saw a boy drawing water from the well, and that she ran diagonally across the street, instead of using the regular crossing. A child must be judged as a child, and there is nothing to show that she knew that it was dangerous to cross the covering of the well."
The situation is different in this case, as young Delaboussaye was older than the girl in the cited case, and he not only knew of the dangerous condition of the bridge and had crossed it many times, but he had also been warned by both of his parents to be careful in crossing the bridge. Moreover, the condition of the bridge was apparent to any one who crossed it in the day time, and there was no condition of darkness or obscurity to prevent the defects in the bridge from being seen by this boy as he "walked fast" or "trotted" across the bridge.
In the case of Cato et al. v. City of New Orleans, La. App.,4 So.2d 450, a thirteen year old child was excused from the charge of contributory negligence when she tripped on a loose brick in the sidewalk on the ground that the accident occurred at night when visibility was affected by the shades of night.
[6] The alleged contributory negligence of persons sustaining injuries by falling on defective walks or streets has been excused in many cases for the reason that the defect in the walk was not apparent or easily observed, such as was the condition in the case of Parker v. City of New Orleans, supra, and the recent case of Rodrigues et ux. v. City of Sulpher, La. App., 28 So.2d 771. Or in those cases where the accident occurs at night and the injured person is not familiar with the condition of the walk or street. But where the injured person is familiar with the condition of the walk or bridge and the accident happens in the day time, a much greater degree of care is required. Where the pedestrian is familiar with the condition and could see and avoid *Page 79 
the danger if he keeps a proper lookout, his negligence will bar his recovery.
In our opinion, the following two cases have considerable application to the present case: Cusimano v. City of New Orleans, 123 La. 565, 49 So. 195, and Bodenheimer v. City of New Orleans et al., La. App., 18 So.2d 224.
[7] Our conclusion is that the Delahoussaye boy was guilty of such contributory negligence as to bar his recovery, and for that reason the judgment which dismissed his claim and that of his father is hereby affirmed.