CUTRER, Judge.
This appeal arises out of a suit for damages incurred as a result of an intersectional vehicular collision involving a vehicle driven by Mervis Thomas and one driven by Joey Fontenot.
Thomas, alleging the lack of proper traffic controls at the intersection and the negligence of Fontenot in the operation of his vehicle, filed suit for damages against the City of Ville Platte (City) and State Farm Mutual Insurance Company (State Farm), liability insurer of Fontenot. State Farm filed a third party demand against the City.
After trial, judgment was rendered in favor of Thomas and against the City and State Farm, in solido, for the sum of $3,572.50. This sum included $1,500.00 general damages for personal injuries; $273.50 medical expenses and $1,799.00 property damage to Thomas’ automobile. State Farm’s third party demand was dismissed. The City and State Farm appeal. We reverse in part and affirm in part.
The facts of this case are as follows:
On Saturday, March 29, 1980, in Ville Platte, Louisiana, Thomas left a supermarket and was proceeding to his home, driving South on Court Street. He was being followed by his sister-in-law, Myrtis Adams. As Thomas proceeded, he arrived at the intersection of Court and Magnolia Streets. Traffic proceeding along Court Street is controlled by a blinking yellow signal. Traffic on Magnolia is controlled by stop signs. These stop signs are attached to a 4V2 foot metal stand which is welded to an automobile wheel. At the time of the accident it was drizzling rain and the paved intersection was slippery. Located on the northeast corner of the intersection near the street is a building. This structure obstructed the view of the two drivers as they approached the intersection.
Thomas testified that as he approached the intersection, he slowed his vehicle to a “rolling stop,” looked to his left and right and, not seeing any vehicles approaching, proceeded into the intersection. Thomas stated that the Aucoin building and cars parked along Magnolia Street limited his view down Magnolia to approximately two car lengths. Thomas had proceeded slightly past the middle of the intersection when he saw Fontenot’s car coming into the intersection. The Fontenot vehicle struck the Thomas car just behind the front door. The impact caused Thomas’ car to spin around in the intersection resulting in injuries to Thomas.
Fontenot testified that he was proceeding west on Magnolia Street at a speed of 30 miles per hour. He stated that as he approached the intersection with Court Street he saw no control devices regulating traffic on Magnolia. He stated that there was no blinking signal for traffic on Magnolia Street and he did not see any stop signs controlling his lane of travel. He testified that he slowed his vehicle to 20 miles per hour and proceeded through the intersection striking the Thomas vehicle. Fontenot stated that after the accident he noticed that the stop sign, that would have controlled his traffic lane, was down and lying next to the curb.
Mrs. Adams, who was following Thomas, testified that Thomas came to a “slow crawl” as he entered the intersection. She further stated that after the accident she noticed that the stop sign which controlled Fontenot’s lane of traffic was lying near the curb. She also stated that the stop signs on Magnolia were standing about thirty minutes to one hour before the accident. The investigating officer also stated that the stop sign was down after the accident.
The appeals by the City and State Farm present the following issues:
*295 (1) Whether the City is liable for damages;
(2) Whether Fontenot was negligent, thus rendering his insurer, State Farm, liable for damages;
(3) Whether Thomas was contributorily negligent;
(4) Whether the general damages awarded by the trial court were excessive; and
(5) Whether State Farm’s third party claims for indemnity against the City should be allowed.
LIABILITY OF THE CITY
In its reasons for judgment the trial court held the City liable, observing that the intersection in question is heavily traveled, the heaviest traffic proceeding along Court Street. The trial judge went on to state as follows:

.. The Court finds that the traffic control system of a flashing caution light, and a stop sign on West Magnolia, installed on an automobile rim, was inadequate to warn traffic proceeding west on West Magnolia. It is the duty of a city to have adequate traffic controls at intersections such as the one herein. Apparently the stop sign on West Magnolia installed on an automobile rim had fallen, and was not visible to the traffic traveling west on Magnolia Street. The City officials of Ville Platte should have foreseen such an incident, and as such, it violates a duty to the traveling public by having such a stop sign.”

We disagree with the trial judge’s conclusion that the traffic control system at the intersection was improper or inadequate. The record contains no testimony or other evidence to the effect that a blinking yellow light controlling traffic on Court Street and stop signs controlling traffic on Magnolia Street were improper or inadequate for handling traffic at the intersection. Also, the record contains no evidence or testimony that a stop sign mounted on an automobile wheel is inadequate or improperly designed. No evidence was presented to show the stability or instability of this design for the stop sign. There is no evidence to show what caused the stop sign to be lying down after the accident.
Whether we determine the responsibility of the City according to LSA-C.C. art. 2317 or art. 2315, the resulting conclusion would be the same. The record simply does not contain evidence that could be a basis for holding that the system of control (blinking yellow light for Court Street and stop signs for Magnolia Street) or the design of the stop sign, per se, creates an unreasonable risk of harm to the public (art. 2317). Goodlow v. City of Alexandria, 407 So.2d 1305 (La.App. 3rd Cir. 1981). We cannot assume, without evidence, that such a system or design creates an unreasonable risk of harm to the public.
The application of art. 2315 produces the same result. Mrs. Adams testified that the sign was standing thirty minutes to one hour before the accident. There is no testimony that the City had any knowledge of the fact that the sign was down before the accident. Under art. 2315, unless Thomas shows that the City had such knowledge, actual or constructive, and failed to correct same, the City is not liable for damages caused by the stop sign being down. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975). Due to the lack of proof, we conclude that the trial judge erred in holding the City liable and that portion of the trial judgment will be reversed.
NEGLIGENCE OF JOEY FONTENOT
The trial court held Fontenot negligent in the operation of his vehicle. We agree with this conclusion.
Summarizing Fontenot’s testimony at trial, it is evident that he was well acquainted with the intersection. He knew it to be heavily traveled. He slowed down at the intersection but proceeded “right on through.” He approached the intersection at 30 miles per hour but was traveling 20 miles per hour when he hit Thomas’ car. He knew the intersection had been controlled by stop signs prior to the accident. *296 He was also aware of the Aucoin building obscuring his vision north on Court Street until he was into the intersection. When questioned by Thomas’ counsel:

“Q. And you had known before that at one time there had been a stop sign facing you in that direction?

“A. Yes, sir.

“Q. But this time you looked and you didn’t see nothing, so you just assumed that you could go right on through?

“A. Yes, sir.”

Fontenot stated that he considered Court Street more heavily traveled than Magnolia. He had lived in Ville Platte all of his life.
We find no error in the trial court’s finding that Fontenot was guilty of negligence. When Fontenot entered this known hazardous intersection, charged with knowledge that a stop sign had previously controlled Magnolia Street traffic, without ascertaining traffic conditions approaching the intersection on Court Street, he was guilty of negligence. The stop sign being down does not create an unqualified right for Fontenot to drive through a known dangerous intersection without ascertaining the traffic conditions on the more heavily traveled Court Street. Fontenot failed to perform the duty imposed upon him to ascertain if he could safely traverse the intersection before entering it. His actions of slowing his speed some and proceeding into the intersection without keeping a proper lookout were negligent. This negligence caused the accident in question. Peterman v. City of Hammond, 378 So.2d 181 (La.App. 1st Cir. 1979). The trial court judgment, finding Fontenot liable for damages, shall be affirmed.
CONTRIBUTORY NEGLIGENCE OF THOMAS
The trial court correctly found that Thomas was free of contributory negligence. Thomas approached the intersection controlled by a blinking light with caution, coming to a “rolling stop.” He looked to his right and to his left and saw no approaching automobiles. It was only after the Thomas vehicle entered the intersection that Fontenot’s vehicle suddenly appeared. Fontenot’s vehicle was not in the process of stopping. The Thomas vehicle had preempted the intersection. The accident occurred when the Thomas vehicle was slightly south of the middle of the intersection. The damage to the Thomas vehicle was located along the rear quarter panel extending along the side of the trunk on the driver’s side. We hold that Thomas satisfied the requirements of LSA-R.S. 32:234(A)(2) which provides:

‘“A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:

U t * * *

‘“(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL)—When a yellow lens is illuminated with rapid intermittent Hashes, drivers of vehicles may proceed through or past such signal only with caution.”

See McMillan v. State Farm Mut. Auto. Ins. Co., 356 So.2d 1368 (La.1978).
DAMAGES
It is urged that the general damages awarded to Thomas in the amount of $1,500.00 are excessive. We disagree and affirm the award by the trial court. Thomas sustained an acute cervical strain. He was disabled from March 31st until April 23, 1980. Dr. Charles E. Fontenot stated that Thomas experienced pain during this four week period and would probably experience some pain for a short time after his release.
It is well settled law, that the trial judge has much discretion in his award of damages and, that this discretion should not be supplanted by that of the appellate court unless the record clearly discloses that it has been abused. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); LSA-C.C. art. 1934(3). Prior decisional awards may be helpful in determining the amount of damages to be awarded but they are not binding:
*297 “The primary purpose of the judge or jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injuries under the facts shown to exist in his case.” Reck, supra, at 500.
We find the award to be adequate and within the bounds of the trial judge’s discretion.
Due to the conclusion we have reached, it is not necessary to consider the remaining issue of whether State Farm is entitled to indemnity from the City. The third party demand of State Farm was correctly dismissed.
For the foregoing reasons, the judgment of the trial court rendered in favor of Thomas and against the City of Ville Platte is reversed and set aside. In all other respects the judgment of the trial court is affirmed. All costs of the trial court and for this appeal shall be paid by State Farm.
REVERSED IN PART; AFFIRMED IN PART.